[No. 16200-8-II.   Division Two.   July 25, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD MOORE, *Appellant.*

---

*John M. Wolfe* of *Pacific County Public Defense Office,* for appellant.

*Michael J. Sullivan, Prosecuting Attorney,* for respondent.

ALEXANDER, J. — Richard Moore appeals his conviction and sentence on a charge of third degree assault, contending that the trial court erred in denying his motion to withdraw his plea of guilty, and in computing his offender score. We reverse and remand for trial, concluding that the trial court erred in denying Moore's motion to withdraw his plea.

Moore was charged in Pacific County Superior Court with one count of indecent liberties. He subsequently pleaded guilty to an amended charge of third degree assault. Before entering his plea to the reduced charge, Moore disclosed to the prosecuting attorney that, in 1980, he had received a deferred sentence for the crime of attempted indecent liberties. At the time he entered his plea, Moore was under the impression that because the charge for which he received the deferred sentence had been dismissed, the prior deferred

sentence would not affect his offender score and that his score would, therefore, be 0.[1]

At the hearing at which the plea of guilty was entered, Moore presented the sentencing judge with a "statement of defendant on plea of guilty to a felony" that was signed by him and acknowledged by the deputy prosecutor. It indicated that "[t]he standard sentence range for the crime(s) is *at least one month and not more than three months*, based upon my criminal history which I understand the Prosecuting Attorney says to be . . . -0-."[2] The sentencing judge then inquired of Moore and the deputy prosecuting attorney about Moore's standard sentencing range:

> THE COURT: What is the standard range if you plead to that?
>
> THE DEFENDANT [Moore]: Says here one to three months, Your Honor.
>
> THE COURT: Is that right, Mr. Conley [deputy prosecuting attorney]?
>
> MR. CONLEY: Yes, it is.

Moore's written statement on plea of guilty, as well as his oral statements in response to the trial court's questions, were consistent with a memorandum the prosecutor's office had sent to Moore's attorney before sentencing. It said:

> My understanding is that the following is the plea bargain. [Moore] will plead to Assault 3 with sexual motivation and will agree to registration as a sex offender. We will recommend mid-standard range. [Moore] asserts that the prior offense was deferred and therefore his criminal history is -0-. Mid-standard range therefore would be 45 days.

At the subsequent sentencing hearing, the State took the position that Moore's prior deferred sentence for attempted indecent liberties should be included in calculating his offender score. The State's change of position appeared to be prompted by the opinion of a Department of Corrections officer who testified at the sentencing hearing about the effect of the prior deferred sentence, as follows:

---

[1]Apparently, Moore had no other prior convictions that affected his offender score.

[2]With an offender score of 0, the standard range sentence for third degree assault is 1 to 3 months.

> The information I've been given from the Sentencing Guidelines Commission and certainly from the Sentencing Implementation Manual, is in lay terms. . . . And as far as the Sentencing Guidelines Commission is concerned and from what I can glean from the text that's existing, this is not a vacated Judgment and Sentence.

The presentence report prepared by the Department of Corrections confirmed that, in 1980, Moore had received a deferred sentence for attempted indecent liberties. The report also indicated that, following successful completion of probation, Moore was allowed, pursuant to RCW 9.95.240, to change his plea to not guilty and the charge of indecent liberties was dismissed.

The sentencing court agreed with the State's analysis of the impact of the prior deferred sentence and concluded that Moore's offender score was 3. This had the effect of increasing Moore's sentence range to 9 to 12 months. Moore then moved to withdraw his guilty plea. The sentencing judge denied Moore's motion, noting that Moore had signed a statement on plea of guilty which indicated:

> I fully understand that my plea of guilty to this charge is binding upon me if accepted by the court, and I cannot change my mind if additional criminal history is discovered and the standard sentence range and Prosecuting Attorney's recommendation increases.

The sentencing judge concluded that the late discovery of the legal effect of the prior deferred sentence on Moore's offender score was tantamount to discovery of additional criminal history and, thus, did not provide a basis for withdrawal of the plea. Moore was sentenced to serve $10^1/2$ months in jail.

Moore raises two contentions on appeal. First, he claims that the deferred sentence he received in 1980 for attempted indecent liberties should not have been factored into his offender score because the charge upon which the deferred sentence was based was dismissed prior to the time he entered his plea of guilty to the instant charge. He reasons that although the dismissal of that charge occurred before the effective date of the Sentencing Reform Act of 1981

(SRA), such a dismissal is analogous to a vacation of a sentence under the SRA and, as a consequence, the underlying offense should not affect his offender score. *See* RCW9.94A.230. Moore asserts, alternatively, that the sentencing court erred in not allowing him to withdraw his guilty plea once he learned that the trial court would factor the prior deferred sentence into his criminal history score.

# I.

## OFFENDER SCORE

Moore's 1980 conviction was dismissed in 1985. According to Moore, the dismissal was equivalent to the "vacation" of a sentence under RCW 9.94A.230(3).[3] RCW 9.94A.230(3) expressly provides that "[o]nce the court vacates a record of conviction . . ., the fact that the offender has been convicted of the offense shall not be included in the offender's criminal history for purposes of determining a sentence in any subsequent conviction . . .". Thus, Moore says his 1980 conviction should not have been used in this case.

■ The vacation of an SRA sentence, *i.e.*, a sentence for a felony committed on or after July 1, 1984, is governed by RCW 9.94A.220-.230. *State v. Hoffman*, 67 Wn. App. 132, 134, 834 P.2d 39, *review denied*, 120 Wn.2d 1014 (1992); RCW 9.94A.905. The dismissal of a pre-SRA sentence, *i.e.*, a sentence for a felony committed before July 1, 1984, is governed by RCW 9.95.240. *Hoffman*, 67 Wn. App. at 134. Therefore, the dismissal of Moore's 1980 conviction was effected under RCW 9.95.240.[4]

---

[3]Moore concedes the conviction did not "wash out". *See* RCW 9.94A.360(2) ("sex prior felony convictions shall always be included in the offender score"); former RCW 9.94A.030(29) ("[s]ex offense" includes attempt to commit felony in violation of RCW 9A.44); RCW 9A.44.100 (indecent liberties is felony within RCW 9A.44). He also concedes the conviction disqualified him from being treated as a first offender. *State v. Partida*, 51 Wn. App. 760, 756 P.2d 743, *review denied*, 111 Wn.2d 1016 (1988).

[4]In passing, we observe that if RCW 9.94A.220.230 did apply, Moore probably could not have obtained a vacation of his prior conviction. RCW 9.94A.230(2)(c) states that vacation is impermissible if "the offense was a crime against persons as defined in RCW 43.43.830". RCW 43.43.830(5) provides that one "crime against persons" is indecent liberties.

RCW 9.95.240 expressly provides that in any subsequent prosecution, a prior conviction "may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed."[5] Applying this statute to a situation analogous to ours, Division Three held that a pre-SRA conviction, later dismissed in accordance with RCW 9.95.240, nonetheless counts as part of the defendant's offender score in a subsequent SRA prosecution. *State v. Wade*, 44 Wn. App. 154, 160, 721 P.2d 977, *review denied*, 107 Wn.2d 1003 (1986); *see also State v. Partida*, 51 Wn. App. 760, 762, 756 P.2d 743, *review denied*, 111 Wn.2d 1016 (1988). Likewise, we hold that Moore's 1980 conviction was properly included in his offender score, and that his standard range was properly set at 9 to 12 months.

## II

### WITHDRAWAL OF PLEA

■ We now consider whether the sentencing court erred in not permitting Moore to withdraw his guilty plea after the sentencing judge determined that the prior deferred sentence would impact Moore's offender score. CrR 4.2(f) provides that:

> The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

The term "manifest injustice" in CrR 4.2(f) means "injustice that is obvious, directly observable, overt, not obscure." *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991). In *Saas*,

---

[5]Quoted in full, RCW 9.95.240 provides:

"Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, may at any time prior to the expiration of the maximum period of punishment for the offense for which he has been convicted be permitted in the discretion of the court to withdraw his plea of guilty and enter a plea of not guilty, or if he has been convicted after a plea of not guilty, the court may in its discretion set aside the verdict of guilty; and in either case, the court may thereupon dismiss the information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted. The probationer shall be informed of this right in his probation papers; PROVIDED, That in any subsequent prosecution, for any other offense, such prior conviction may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed."

Washington's Supreme Court noted that the defendant has the demanding burden of demonstrating that a "manifest injustice" requires withdrawal of a guilty plea. To prove "manifest injustice", one of four nonexclusive factors may be shown:

> (1) denial of effective counsel, (2) plea . . . not ratified by the defendant or one authorized [by him or her] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.

*Saas*, at 42 (quoting *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974)).

Moore does not claim that his counsel was ineffective, nor does he assert that he did not sign his statement on plea of guilty. Rather, Moore's claim of "manifest injustice" is based on his assertion that he and the State were laboring, albeit innocently, under a mistaken belief as to the effect the prior deferred sentence would have on Moore's offender score. More specifically, he argues that he did not know all the consequences of his plea at the time he entered it and therefore, his plea was not voluntary. *See State v. Skiggn*, 58 Wn. App. 831, 835, 795 P.2d 169 (1990) (defendant must understand sentencing consequences for valid guilty plea) (citing *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988)).

We find our Supreme Court's holding in *State v. Miller, supra*, to be persuasive. In *Miller*, the defendant, Miller, confessed to a murder. Pursuant to a plea agreement with the State, Miller agreed to plead guilty to first degree murder on the condition that he could freely argue for an exceptional sentence of less than 20 years. The State agreed to recommend 20 years. Three months after entering his plea, but prior to sentencing, Miller learned that RCW 9.94A.120(4) required a mandatory minimum sentence of 20 years for first degree murder. The record showed that Miller's attorney and the prosecutor had inadvertently and without bad faith overlooked the effect of RCW 9.94A.120(4). Miller subsequently moved to withdraw his guilty plea. The sentencing court denied the motion and enforced the original plea agreement.

On appeal, the court found that, because ·Miller did not understand the sentencing consequences resulting from his plea of guilty, he was entitled to choose between withdrawal of his plea and specific enforcement of the terms of the original plea agreement. *Miller*, at 531; *see also State v. Cosner*, 85 Wn.2d 45, 50, 530 P.2d 317 (1975) (where due process so dictates, plea agreement may be enforced where mistake as to sentencing consequences occurs, despite contrary statute); *In re James*, 96 Wn.2d 847, 849, 640 P.2d 18 (1982), *cited in Miller*, 110 Wn.2d at 533 ("[d]efendants' constitutional rights under plea agreements take priority over statutory provisions").

■ Once a defendant indicates his or her choice of remedy in such cases, the State "bears the burden of demonstrating that the defendant's choice of remedy is unjust." *Miller*, 110 Wn.2d at 536. The *Miller* court said:

> We hold now that the defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy. There may be circumstances under which the defendant's choice of remedy would be unfair to other parties. For example, a defendant's choice of specific performance as a remedy for a plea agreement in violation of the Sentencing Reform Act of 1981 may be unfair if the violation was caused by misinformation provided by the defendant. Similarly, the choice of plea withdrawal may be unfair if the prosecutor has detrimentally relied on the bargain and has lost essential witnesses or evidence. . . .
>
> . . . .
>
> . . . We . . . hold that the integrity of the plea bargaining process requires that once the court has accepted the plea, it cannot ignore the terms of the bargain, unless the defendant . . . chooses to withdraw the plea.

(Citation omitted.) *Miller*, at 535-36. Because it is apparent that Moore, like Miller, did not understand all of the consequences of his guilty plea, he should have been allowed his choice of remedy, absent a showing that the remedy chosen by him was unjust in the sense that it would be unfair to the State to allow withdrawal of the plea. The State has not argued that it would be prejudiced in any way if Moore were allowed to withdraw his plea. Indeed, it concedes in its brief that it could still procure its key witness for trial. Therefore, Moore should be allowed his choice of remedy.

Our ruling is narrow. We hold only that a defendant is entitled to set his or her plea aside, when the defendant has disclosed a prior conviction before the plea; both counsel told him it would not count as part of his standard range; and he entered the plea with that understanding. We acknowledge that there may be other situations in which a guilty plea will be valid if the defendant understands that the *judge* determines the standard range at a *sentencing* proceeding, based upon the defendant's criminal history as it then appears; that any range discussed by the *parties* at a *plea* proceeding is necessarily tentative; and that to plead guilty is to assume the risk that the standard range established at the sentencing will be higher than the standard range discussed at the plea. *See* RCW 9.94A.100; RCW 9.94A.090(2); RCW 9.94A.080(6); RCW 9.94A.370(2).

In conclusion, we hold that it was manifestly unjust for the sentencing judge to deny Moore's request to withdraw his guilty plea. We, therefore, reverse and remand for trial.

Reversed.

MORGAN, C.J., and SEINFELD, J., concur.