12 P.3d 1036 (2000)
103 Wash.App. 487
STATE of Washington, Respondent,
v.
Jeremy David PAUL, Appellant.
No. 24425-0-II.
Court of Appeals of Washington, Division 2.
November 17, 2000.
*1037 Thomas Edward Doyle, Hansville, Robert Mason Quillian, Olympia, for Appellant.
J. Andrew Toynbee, Lewis County Deputy Prosecuting Attorney, Chehalis, for Respondent.
FOSCUE, J.P.T.[1]
Jeremy Paul appeals from an order denying his motion to withdraw his plea of guilty to one count of first degree burglary and three counts of theft of a firearm. Paul contends he was unaware of the correct sentencing range and, therefore, the trial court erred in finding that he entered his plea voluntarily and knowingly. We affirm.

FACTS
In July 1998, Paul was arrested while driving in Cowlitz County because of what Paul described as "some road rage stuff." The State charged him in Cowlitz County with felony harassment and unlawful possession of a firearm.
The firearm discovered in Paul's vehicle was one of three firearms he had stolen in a Lewis County burglary two days earlier. The State then charged Paul in Lewis County with one count of first degree burglary, three counts of theft of a firearm, and three counts of first degree unlawful possession of a firearm. The State later amended the information to add a firearm enhancement to the first degree burglary count.
On October 2, 1998, in Lewis County, Paul entered an Alford plea[2] to one count of first degree burglary, without a firearm enhancement, and three counts of theft of a firearm. But in paragraph 6(a) of the Plea Statement, the expected standard sentencing range was omitted:
The crime with which I am charged carries a maximum sentence of LIFE ... imprisonment and a $50,000 fine. The standard sentence range is from ___ months to ___ months confinement, based *1038 on the prosecuting attorney's understanding of my criminal history.
(Emphasis added). This omission is the basis for Paul's appeal.
In paragraph 6(c), the prosecutor listed Paul's prior California convictions of first degree burglary and grant theft. At the end of the paragraph, defense counsel added a handwritten comment about Paul's prior convictions:
Unless I [Paul] have attached a different statement, I agree that the prosecuting attorney's statement [of the criminal history] is correct and complete. If I have attached my own statement, I assert that it is correct and complete.... DEFENDANT BELIEVES THEFT CHARGE TO BE A MISDEMEANOR & DEFENSE IS UNSURE OF CORRELATION BETWEEN CALIFORNIA & WASHINGTON BURGLARY STATUTES.

(Emphasis added.)
In paragraph 6(f), the prosecutor agreed to recommend at sentencing a 75 month prison term.[3] The prosecutor further "ACKNOWLEDGES COWLITZ COUNTY AGREEMENT TO RUN ITS SENTENCE CONCURRENT WITH LEWIS COUNTY IF [PAUL] P.G. IN COWLITZ CO. AS CHARGED."
In connection with Paul's execution of the Plea Statement, defense counsel discussed sentence ranges with Paul using two "Offender Scoring" sheets for first degree burglary. On both sheets defense counsel calculated Paul's offender score to be four, representing a sentence range of 36 to 48 months.[4] But on the back of one of the sheets, defense counsel wrote: "IF GRAND THEFT IS MISDEMEANOR & ST[ATE] V. ROOSE [APPLIES], RANGE IS 31-41 MONTHS."[5]
At the hearing on Paul's plea, the trial judge questioned Paul about his understanding of potential sentence consequences:
JUDGE BROSEY: You understand that I'm not required to accept the recommendation made by [defense counsel], yourself, or the prosecutor as far as sentence is concerned; that I could sentence you to the maximum provided for by law?
MR. PAUL: Yes.
JUDGE BROSEY: You understand that Count I, Burglary in the First Degree, is a Class A felony and the maximum punishment is life imprisonment?
MR. PAUL: Yes.
JUDGE BROSEY: You understand Count II, Theft of a Firearm, Count III, Theft of a Firearm, Count IV, Theft of a Firearm, are all Class B felonies and the maximum punishment for those is 10 years each; do you understand that?
MR. PAUL: Yes.
JUDGE BROSEY: Now, [defense counsel] has in his hand a Statement of Defendant on Plea of Guilty form. Did he discuss with you and go over that with you?
MR. PAUL: Yes.
JUDGE BROSEY: That form contains a complete listing or enumeration of your rights. Do you have any questions about your rights?
MR. PAUL: No.
. . . .
JUDGE BROSEY: And you understand that your criminal history consists of a Burglary First out of California and a Grand Theft? ...

*1039 [DEFENSE COUNSEL]: Mr. Paul believes the Grand Theft was a misdemeanor. We're not sure of the correlation between Washington and California.
JUDGE BROSEY: There's a dispute as to criminal history?
[DEFENSE COUNSEL]: Yes, Your Honor.
JUDGE BROSEY: You understand the State's going to recommend 75 months.... Counts V, VI, and VII [charging unlawful possession of a firearm] are dismissed. The firearm enhancement is dismissed. The State acknowledges the Cowlitz County agreement to run it's [sic] sentence concurrent with Lewis County if the defendant pleads guilty in Cowlitz County as charged.
Do you understand that offer?
MR. PAUL: Yes.
The trial judge determined that there was a factual basis for the plea and then accepted it as being made with full knowledge of its consequences.
On the date set for Paul's sentencing, November 9, 1998, Paul sought to withdraw his plea. The trial court appointed new counsel for Paul and rescheduled sentencing, apparently based on Paul's "indicat[ion] that he did not know if he wanted to withdraw his guilty pleas."
At some point following the entry of Paul's guilty plea in Lewis County, the State amended the Cowlitz County charges and Paul pleaded guilty to one count of second degree unlawful possession of a firearm and one count of second degree possession of stolen property. Paul was sentenced in Cowlitz County on December 1, 1998. Because he was convicted in Cowlitz County before he was sentenced in Lewis County, the Cowlitz convictions became part of his criminal history for the Lewis County case.[6]
In January 1999, Paul moved to withdraw his Lewis County guilty plea. At the hearing on the motion, Paul testified that he anticipated a standard sentence range of either 31 to 41 months or 36 to 48 months based on an offender score of three or four, respectively, and that he would have insisted on going to trial had he known he was facing a range of 57 to 75 months based on an offender score of six.[7] But Paul further testified that, before he entered his plea: (1) defense counsel had "explained two or three difference [sentences] that [he] could get," including a sentence within the 57 to 75 month range; (2) he knew the State was going to recommend 75 months; (3) he knew there was a dispute as to the correct sentencing range; (4) he was told by defense counsel he "[p]ossibly ... wouldn't get [75 months];" and (5) he knew the sentencing judge could go beyond the State's recommendation up to life in prison. (Emphasis added.)
Paul's original defense counsel testified that he had met with Paul prior to the plea to discuss the case at least seven times, had corresponded with Paul at least three times and had explained to Paul that (1) his view of the applicable sentence range "wasn't for sure ... [because] [t]here was still the sentencing proceeding"; and (2) the prosecutor believed the applicable sentence range to be 57 to 75 months.
The trial judge denied Paul's motion to withdraw the guilty plea, explaining:
[I]t's abundantly clear to me the reason [the standard range on the Plea Statement] was not filled out was because there was then and ... there still remains a major disagreement between the defense and the State as to what Mr. Paul's criminal history is.
... But still, one of the questions that I asked Mr. Paul on the record the day that I took the plea was, ["]You understand the State's going to recommend 75 months,["] to which he responded, ["]Yes.["]
. . . .
If you understood the State was recommending 75 months and you understood your standard range was 31 to 41 months, how anybody could go through it and not say, ["]Wait a minute[:] I understood it *1040 was only 31 [sic] months maximum.["] I don't believe Mr. Paul did not understand what was happening....
I think he entered the plea knowingly and intelligently with full knowledge of the consequences and on the advice of competent counsel.
. . . .
I don't see any evidence of a manifest in justice [sic].
At sentencing, the court counted the Lewis County burglary and thefts of a firearm as the same criminal conduct, and it then calculated an offender score of five on the burglary offense and four on the theft offenses. In calculating the burglary offender score, the court found that the prior California grand theft qualified as a felony in Washington, assessed the Cowlitz County unlawful possession of a firearm and possession of stolen property convictions as separate offenses, and imposed the RCW 9.94A.360 multiplier on the prior California burglary conviction. This resulted in a standard sentence range of 41-54 months for the first degree burglary charge. The court then sentenced Paul to 49 months for the burglary and 41 months for each of the thefts of a firearm; ran all of the terms concurrently with each other,[8] but consecutive to the Cowlitz County sentence Paul had earlier received.
On appeal, Paul argues that the trial court erred in denying his motion to withdraw his guilty plea because, at the time of the plea, he was not advised "what his sentence range was," and "there was a dispute as to his sentence range," and "what the various possibilities were."

ANALYSIS
Under CrR 4.2(f), a trial court must allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." "CrR 4.2(f) imposes a demanding standard on a defendant...."[9] A "manifest injustice" is "`an injustice that is obvious, directly observable, overt, not obscure'"[10] and occurs only when (1) the defendant has been denied effective assistance of counsel; (2) the plea was not ratified by the defendant or the defendant's agent; (3) the plea was involuntary; or (4) the plea agreement was not kept by the State.[11]
Paul claims his plea was involuntary. An involuntary plea constitutes a manifest injustice.[12] A plea is involuntary unless it is made with an understanding of all direct consequences of the plea.[13] The distinction between direct and collateral consequences of a plea "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."[14] A sentencing range represents such a definite, immediate and largely automatic effect on a defendant's punishment.[15] Thus, where a defendant enters a plea of guilty based on a prosecutor's erroneous advice that the standard sentencing range was lower than it actually was, the defendant must be permitted to withdraw his plea.[16]
Here, Paul did not detrimentally rely on the prosecutor's calculation of the sentencing range; he was hoping the prosecutor's calculation was incorrect. At the time *1041 Paul entered his plea there were significant unresolved issues about his standard range. The record demonstrates that Paul had a sufficient understanding of the standard sentence range he was facing at the time of his plea and that he understood that it could be as high as 57 to 75 months. Paul testified that he knew there was a dispute as to the correct range, and that his counsel had "explained two or three different things that [he] could get," including the "57 to 75 range." Paul also testified he knew that the prosecutor would be recommending a sentence of 75 months based on a range of 57 to 75 months. Moreover, the Plea Statement Paul signed clearly listed the prosecutor's intention to recommend 75 months, and Paul told the trial judge during the plea hearing that he understood the State would be recommending 75 months.
Significantly, the possibility of a 31 to 41 month range, as suggested by defense counsel, was real. At the time of the plea, Paul argued that the California grand theft was a misdemeanor and should not count. If that was correct, and if the three counts of theft of a firearm merged under Roose, Paul's criminal history at the time of his plea for the Lewis County matter would have been three and his standard range 31-41 months. If the grand theft was a felony his criminal history would have been 4 and his standard range would be 36-48 months. That Paul's prior California grand theft conviction ultimately factored into his offender score as a felony is of no consequence: defense counsel provided Paul an accurate representation of his then-existing offender score and corresponding sentence range. Moreover, Paul testified he would have pleaded guilty to the higher range of 36 to 48 months based on an offender score of four.
At the time of the plea in Lewis County, the parties apparently expected that Paul would be sentenced in Lewis County before conviction in Cowlitz County. Thus, the Cowlitz County offenses would not have contributed to Paul's offender score for the Lewis County burglary.[17] Paul's sentencing was delayed by his uncertainty as to whether he wanted to move to withdraw his plea of guilty. But Paul was advised in paragraph 6(d) of his Plea Statement that a conviction before sentencing would affect his standard range:
If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me.
Although a sentence within the sentencing range is a direct consequence of a plea of guilty, in State v. Moore,[18] this court avoided holding that a defendant must be told his precise sentencing range at the time of his plea:
Our ruling is narrow. We hold only that a defendant is entitled to set his or her plea aside, when the defendant has disclosed a prior conviction before the plea; both counsel told him it would not count as part of his standard range; and he entered the plea with that understanding. We acknowledge that there may be other situations in which a guilty plea will be valid if the defendant understands that the judge determines the standard range at a sentencing proceedings, based upon the defendant's criminal history as it then appears; that any range discussed by the parties at a plea proceeding is necessarily tentative; and that to plead guilty is to assume the risk that the standard range established at the sentencing will be higher than the standard range discussed at the plea.[19]
This is one of those other situations. Indeed the Washington sentencing law anticipates that there will be times when the sentencing range is disputed at the time of the entry of a plea and provides for the later resolution of those disputes at sentencing. RCW 9.94A.100 provides:

*1042 The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement. All disputed issues as to criminal history shall be decided at the sentencing hearing.
RCW 9.94A.110 provides that at sentencing:
If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist.
The mandatory Plea of Guilty form follows this statutory plan. The paragraph at issue here, 6(a) reads:
The crime with which I am charged carries a maximum sentence of ____ years imprisonment and a $____ fine. The standard sentence range is from ____ months to ____ months confinement, based on the prosecuting attorney's understanding of my criminal history."
Paragraph 6(c) provides for the prosecutor's statement of criminal history and directs the defendant to attach a different statement if he believes that the State's version is incorrect or incomplete.
Much of the dispute in this appeal would have been resolved had the prosecutor's understanding of the standard sentencing range been expressed in the Plea Statement. But the omission did not decrease Paul's understanding of the consequence of his plea. We hold that the omission does not render this plea involuntary where Paul entered his plea knowing there was a dispute about the appropriate range, where he knew that the standard range could be as high as 57 to 75 months, where he was informed that any subsequent conviction before sentencing could affect the sentencing range, and where he was informed that the ultimate decision as to the standard range and the sentence rested with the judge and could be exercised at the time of sentencing.
Paul knowingly assumed the risk that the standard range would be determined by the judge to be as high as 57 to 75 months. The United States Supreme Court in Alford held that the standard for testing the validity of a guilty plea "was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."[20] Paul made such a voluntary and intelligent choice. There was no manifest injustice.
Affirmed.
SEINFELD, P.J., and HOUGHTON, J., concur.
NOTES
[1] Judge David Foscue is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21.
[2] When a defendant enters an Alford plea, he either does not admit guilt or does not admit the underlying facts, but acknowledges that the State has enough evidence to find him guilty. However, an Alford plea is a plea of guilty. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The Washington counterpart to Alford is State v. Newton, 87 Wash.2d 363, 552 P.2d 682 (1976). The reason generally given for an Alford plea is to take advantage of a plea recommendationin Alford's case it was to "avoid a possible death sentence and to limit the penalty to the 30-year maximum provided for second-degree murder." Alford, 400 U.S. at 31, 91 S.Ct. 160. Here, Paul affirmed that he was entering a guilty plea to take advantage of the prosecutor's offer. This offer was substantial: the dismissal of three felony counts and a firearms enhancement plus the apparent recommended concurrency of any Cowlitz County sentence.
[3] The prosecutor believed Paul's sentence range to be 57 to 75 months, based on an offender score of six. The method used by the prosecutor to calculate that offender score is not in the record, but it appears to have been: two points for the prior California burglary; one point for the prior California grant theft; and three points for the Lewis County thefts of a firearm.
[4] On one sheet, Paul's prior California burglary conviction (two points) and the current theft and unlawful possession offenses (one point each) were listed to reach an offender score of four. But on the other sheet, only Paul's prior burglary conviction is listed; the line for current offenses is blank except for a number "2," which is crossed out and a number "1" appears unaltered. Nevertheless, a "4" appears in the total offender score box.
[5] In State v. Roose, 90 Wash.App. 513, 514, 957 P.2d 232 (1998), Division Three held that multiple counts of theft of a firearm may, for sentencing purposes, constitute the same criminal conduct and, therefore, count as one current offense.
[6] RCW 9.94A.360(1).
[7] As explained below, the sentencing court ultimately calculated Paul's offender score to be five and imposed a sentence of 49 months, which was within the standard range of 41 to 54 months for first degree burglary.
[8] Since the Lewis County sentences were concurrent we will focus on the sentence for the first degree burglary charge, which has the longer standard range.
[9] State v. Saas, 118 Wash.2d 37, 42, 820 P.2d 505 (1991).
[10] State v. Branch, 129 Wash.2d 635, 641, 919 P.2d 1228 (1996) (quoting Saas, 118 Wash.2d at 42, 820 P.2d 505).
[11] State v. McCollum, 88 Wash.App. 977, 981, 947 P.2d 1235 (1997).
[12] State v. Aaron, 95 Wash.App. 298, 302, 974 P.2d 1284, review denied, 139 Wash.2d 1002, 989 P.2d 1138 (1999).
[13] CrR 4.2(d); State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980).
[14] Cuthrell v. Director, Patucent Inst., 475 F.2d 1364, 1366 (4th Cir.1973).
[15] State v. Perkins, 46 Wash.App. 333, 338, 730 P.2d 712 (1986), disapproved on other grounds by State v. Miller, 110 Wash.2d 528, 756 P.2d 122 (1988).
[16] Perkins, 46 Wash.App. at 338, 730 P.2d 712.
[17] Even had Paul's counsel counted the Cowlitz County offenses toward Paul's Lewis County offender score, the result would still have been less than the State's reckoning of the standard range.
[18] 75 Wash.App. 166, 876 P.2d 959 (1994).
[19] 75 Wash.App. at 174, 876 P.2d 959.
[20] Alford, 400 U.S. at 31, 91 S.Ct. 160.