138 P.3d 659 (2006)
STATE of Washington, Respondent,
v.
Rickey CALHOUN, Appellant.
No. 55469-7-I.
Court of Appeals of Washington, Division 1.
July 17, 2006.
*660 Maureen Marie Cyr, Washington Appellate Project, Seattle, WA, for Appellant.
Catherine Marie McDowall, King County Prosecutor's Office, Seattle, WA, for Respondent.

PUBLISHED IN PART
APPELWICK, C.J.
¶ 1 Rickey Calhoun seeks to withdraw his 1991 guilty plea to second degree rape and attempted second degree rape, claiming the plea was involuntary because he was informed that the standard range was higher than it actually was. This error was corrected in the judgment and sentence, but other errors occurred, including the court's sentencing of Calhoun to more than the statutory maximum. A decade later, that error was discovered. The superior court corrected that error and others at re-sentencing, but did not allow Calhoun to withdraw his plea. Calhoun claims he is not subject to the RCW 10.73.090(1) one-year time bar for collateral attack because his judgment and sentence was invalid on its face, and because he was not told of the time limit for review when his judgment and sentence was pronounced. Pro se, Calhoun raises additional issues, mostly relating to his pending sexually violent predator (SVP) proceedings. We remand to the sentencing court for correction of Calhoun's offender score, but affirm on all other issues.

FACTS
¶ 2 In November 1991, Rickey Calhoun pleaded guilty to an attempted second degree rape that occurred in 1990 and a second degree rape that occurred in 1989. The State assigned Calhoun an offender score of six for the rape and seven for the attempt. In the plea documents, the State had erroneously listed the seriousness level of the 1989 rape as ten, when it was actually eight. Former RCW 9.94A.320, .310 (1989). Calhoun was thus told the standard range for his 1989 offense was higher than it actually was. The State told Calhoun that it was recommending a sentence at the top of the higher standard range, 130 months, in exchange for the State's promise not file charges in three additional sex crimes. Calhoun was also told that the statutory maximum for his crimes was ten years.
¶ 3 By the time the judgment and sentence was entered in January 1992, the State had discovered additional criminal history and claimed Calhoun's offender score was nine for both offenses. The error in seriousness level for the 1989 rape was corrected. The State again recommended a sentence at the top of the higher standard range, 148.5 months. The court accepted the State's recommendation and sentenced Calhoun to 148.5 months for the attempt, and 144 months for the rape, both at the top of their respective ranges and to be served concurrently. The record does not reflect that Calhoun was informed of the statutory one-year time limit for collateral attacks.
¶ 4 After the State's premature attempt to file a SVP petition in 2000, Calhoun returned to prison.[1] At about the same time, the *661 Department of Corrections (DOC) discovered that Calhoun had been sentenced to more than the statutory maximum. The State filed a motion to modify the judgment and sentence, and on July 3, 2002, the superior court changed the sentence on both counts to 120 months. Calhoun was not notified of this proceeding, nor was an attorney for Calhoun present.
¶ 5 The State filed another SVP petition on July 12, 2002. The court found probable cause, and Calhoun is currently detained, awaiting his SVP trial.
¶ 6 When Calhoun learned of the July 2002, re-sentencing, he filed a motion to vacate the order, contending that his rights to counsel and to due process had been violated. He argued that his plea was involuntary because he was misinformed of the standard range. He also argued that his plea could not be used in the SVP proceeding.
¶ 7 The State conceded that the 2002 re-sentencing was invalid because Calhoun had not been given notice. After two re-sentencing hearings in November and December 2004, at which Calhoun was represented by counsel, the court again re-sentenced Calhoun for his 1989 and 1990 offenses. The court found several mistakes in the original sentence, including the erroneous inclusion of a prior juvenile offense, the counting of a 1982 and a 1985 conviction as two separate offenses for the purposes of Calhoun's offender score,[2] and the violation of the ten year maximum. The court recalculated Calhoun's standard range as 73.5 to 97.5 months on count one, and 46 to 61 months on count two. The court sentenced Calhoun to 97.5 months and 61 months, respectively, to be served concurrently, and noted that the sentence was satisfied. The court ruled that although the judgment and sentence was facially invalid, the errors at the time of the plea had been corrected when judgment and sentence was pronounced, so Calhoun could not withdraw his plea. Calhoun appeals.

ANALYSIS

Voluntariness of Plea
¶ 8 Calhoun asserts that his guilty plea was not knowing, intelligent, and voluntary because it was based on a misunderstanding of the direct sentencing consequences of the plea. He claims that he can challenge the plea so many years after it was entered because he was not informed of the one-year time limit for collateral attack at the time his judgment and sentence was pronounced.
¶ 9 Generally, no collateral attack on a judgment and sentence may be filed more than a year after the judgment is final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction. RCW 10.73.090(1). "At the time judgment and sentence is pronounced in a criminal case, the court shall advise the defendant of the time limit specified in RCW 10.73.090 and 10.73.100." RCW 10.73.110.[3] The time bar in RCW 10.73.090(1) is conditioned on compliance with RCW 10.73.110. State v. Golden, 112 Wash.App. 68, 78, 47 P.3d 587 (2002) (citing In re Pers. Restraint of Vega, 118 Wash.2d 449, 451, 823 P.2d 1111 (1992)). Assuming without deciding that Calhoun was not informed of the time limit and can thus bring this collateral attack, we find that his plea was not involuntary.
¶ 10 There were several errors in Calhoun's judgment and sentence, but those errors do not pertain to whether Calhoun's plea was involuntary. The plea agreement specifically and correctly advised Calhoun that the maximum sentence was ten years. The fact that the court erred in sentencing him in excess of ten years does not make his plea involuntary.[4] He knew the maximum sentence he legitimately faced.
*662 ¶ 11 In addition, Sietz was not decided until 1994. Thus, at the time of Calhoun's original sentencing the case law merging the 1982 and 1985 offenses did not exist. Personal Restraint of Sietz, 124 Wash.2d 645, 880 P.2d 34 (1994). As to this issue, he was correctly informed of the consequences of his plea because those offenses could be counted separately towards his offender score at the time.
¶ 12 Finally, the fact that Calhoun's juvenile offense had washed out does not pertain to whether his guilty plea was involuntary. There were no juvenile offenses in the criminal history at the time of the plea agreement. However, Calhoun was informed in the plea agreement that if the State discovered additional criminal history, the standard sentence and the State's recommendation may increase, but Calhoun was still bound by his plea. See, e.g., State v. Christen, 116 Wash. App. 827, 832, 67 P.3d 1157 (2003) (when entering his plea, defendant was told that his standard range could go up or down based on additional criminal history, so he assumed this risk and could not later withdraw his plea). By the time the court sentenced Calhoun in 1992, the State had discovered the juvenile offense and had included it in the sentence calculation. The fact that the offense had washed out and the court had erroneously counted a juvenile offense towards his offender score does not make his original plea agreement invalid. The above three errors were corrected at re-sentencing and cannot serve as a basis to withdraw Calhoun's plea.[5]
¶ 13 However, there was one error at the time of the plea that could potentially support Calhoun's claim that his plea was involuntary. When he pleaded guilty, Calhoun was misinformed as to the seriousness level of count two and its consequences. He was informed that count two had a seriousness level of ten and a standard range of 98 to 130 months. However, the State apparently used a later version of the sentencing grid to determine this information; the correct seriousness level for a second degree rape committed in October 1989 is eight, and the standard range is 81 to 108 months. Former RCW 9.94A.320, .310 (1989). A plea is involuntary if it is not made with an understanding of all of the direct consequences of the plea. State v. Paul, 103 Wash.App. 487, 494-95, 12 P.3d 1036 (2000). One direct consequence of a plea is the sentencing range. Paul, 103 Wash.App. at 495, 12 P.3d 1036.
¶ 14 There are two lines of reasoning on this issue. Because we find Division Two's approach in Personal Restraint of Matthews, 128 Wash.App. 267, 115 P.3d 1043 (2005), more persuasive and well-reasoned, we follow Matthews and hold that Calhoun's plea was not involuntary.

*663 A. State v. Moon

¶ 15 Calhoun urges us to follow the court's reasoning in State v. Moon, 108 Wash.App. 59, 29 P.3d 734 (2001). In Moon, the defendant was told his standard range was 209 to 277 months, and that the State would recommend a sentence at the low end of the range. Moon, 108 Wash.App. at 60-61, 29 P.3d 734. Moon pleaded guilty, but afterwards learned that his offender score had been wrongly calculated, and that his standard range was actually 175 to 236 months. Moon, 108 Wash.App. at 61, 29 P.3d 734. The trial court rejected Moon's request to withdraw his plea, and sentenced him to the high end of the range. Moon, 108 Wash.App. at 61, 29 P.3d 734.
¶ 16 Division Three of our court reversed. Citing State v. Walsh, 143 Wash.2d 1, 17 P.3d 591 (2001), Division Three held that when a mutual mistake occurs regarding a standard sentence range, a defendant may specifically enforce or withdraw the plea. Moon, 108 Wash.App. at 63, 29 P.3d 734. The court noted that while the existing cases all involve circumstances in which the defendant was told that the range was lower than it actually was, the cases do not make a distinction for the reverse situation. Moon, 108 Wash.App. at 63, 29 P.3d 734. Rather, the cases simply state that the defendant may choose his or her remedy when the plea is based on "misinformation." Moon, 108 Wash.App. at 63-64, 29 P.3d 734. The court held that unless the State could show compelling reasons not to allow Moon his choice of remedy, Moon could withdraw his plea. Moon, 108 Wash. App. at 64, 29 P.3d 734.

B. Personal Restraint of Matthews

¶ 17 The State argues that we should follow the court's rationale in Matthews. In Matthews, the defendant pleaded guilty to two counts, and the State told him it would recommend the high end on one count and an exceptional sentence on the other. Matthews, 128 Wash.App. at 269, 115 P.3d 1043. Several years later he sought to withdraw his guilty plea via a personal restraint petition, alleging that his plea was involuntary because his standard range was lower on both counts. Matthews, 128 Wash.App. at 269, 115 P.3d 1043.
¶ 18 The court rejected Matthews' arguments. The court disagreed with Moon and held that the law only permits plea withdrawal when the misinformation leads the defendant to believe the punishment is less than it actually is. Matthews, 128 Wash.App. at 273, 115 P.3d 1043. The court held that Matthews' plea was thus not invalid on its face, and that Matthews could only withdraw his plea if he could show a manifest injustice under CrR 4.2. Matthews, 128 Wash.App. at 274, 115 P.3d 1043.
¶ 19 Calhoun's case is more similar to Matthews than it is to Moon. In both Matthews and the instant case, the plea bargain promised a recommendation at the top of or above the standard range. In Matthews, the recommendation was 250 months on a 126 to 216 month standard range and 29 months on a 22 to 29 month standard range. Matthews, 128 Wash.App. at 269, 115 P.3d 1043. Here, the recommendation in the plea agreement was 130 months on a 98 to 130 month standard range, and 108 months on an 81 to 108 month standard range. In contrast, the defendant in Moon was promised a recommendation at the low end of the standard range, 209 months. Moon, 108 Wash.App. at 60-61, 29 P.3d 734. Moon was willing to serve at least 209 months, but had he known of the lower range of punishment, he might have been more likely to take his chances with a jury. But in the instant case, the State agreed to recommend the top of what it thought was the standard range, and agreed not to file charges in three other cases involving rapes Calhoun had allegedly committed. Thus, if Calhoun had been informed of the correct, lower range, he likely would not have chosen to take his chances at trial, as he risked being charged in three other matters. The length of the sentence was not the deciding factor in Calhoun's case, but rather the absence of any additional charges. Thus, Calhoun's circumstances are fundamentally different from Moon's.
¶ 20 We find that the Matthews reasoning is more persuasive than the Moon reasoning because it allows courts to make a case-by-case determination of whether the *664 plea was involuntary and whether there was a manifest injustice. As the Matthews court stated:
We do not hold that a defendant is not entitled to withdraw his guilty plea on the basis of a misapprehended higher offender score and standard range. We hold only that such erroneous information does not render the guilty plea invalid on its face. A defendant seeking to withdraw his guilty plea, based on an assumption that the sentence would be harsher than it was in fact, may still do so if he can meet the demanding standard of CrR 4.2(f), which requires a manifest injustice, i.e., an injustice that is obvious, directly observable, overt, not obscure.
Matthews, 128 Wash.App. at 274, 115 P.3d 1043 (citations and quotations omitted). "The four indicia of manifest injustice generally recognized by our courts are: (1) denial of effective assistance of counsel; (2) failure of the defendant or one authorized by him to do so to ratify the plea; (3) involuntary plea; and (4) violation of plea agreement by the prosecution." State v. S.M., 100 Wash.App. 401, 409, 996 P.2d 1111 (2000). Calhoun has not shown a manifest injustice, and, as noted above, the circumstances of Calhoun's plea indicate no logical, objective reason why Calhoun would have withdrawn his plea, had he known of the true standard range for count two.
¶ 21 Our decision in State v. Murphy, 119 Wash.App. 805, 81 P.3d 122 (2002), does not alter our reliance on Matthews. In Murphy, the defendant entered into the plea agreement based on a mutual mistake as to the standard range. Murphy, 119 Wash.App. at 806, 81 P.3d 122. The correct sentencing range was less onerous. Murphy, 119 Wash. App. at 806, 81 P.3d 122. The court followed Moon and held that Murphy had the choice to withdraw his plea, subject to the State's right to present compelling reasons to the contrary. Murphy, 119 Wash.App. at 806, 81 P.3d 122. However, the importance of Murphy appears to be its rejection of the three-part test in State v. McDermond, 112 Wash. App. 239, 47 P.3d 600 (2002), for determining whether the misinformation was material in the defendant's decision to plead guilty. Murphy did not expound upon Moon's reasoning. Further, Murphy was decided before Matthews, so the Murphy court was not presented with another line of reasoning. We now find the Matthews reasoning more persuasive and hold that Calhoun's plea was not involuntary and that he has not shown a manifest injustice.[6]
¶ 22 The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. See RCW 2.06.040.
WE CONCUR: COLEMAN and AGID, JJ.
NOTES
[1] The Department of Corrections (DOC) had initially calculated Calhoun's early release date as November 4, 2000. As Calhoun was about to be released, the State filed an SVP petition. While Calhoun's SVP trial was pending, DOC recalculated his release date as November 26, 2004. The court dismissed the State's petition without prejudice because Calhoun was not about to be released from total confinement, as the SVP statute required. Calhoun returned to prison.
[2] In Personal Restraint of Sietz, 124 Wash.2d 645, 648-49, 880 P.2d 34 (1994), our supreme court held that prior offenses served concurrently should be counted as a single offense for the purpose of calculating an offender score. The 2004 sentencing court applied Sietz and counted the 1982 and 1985 offenses as one offense when recalculating Calhoun's offender score.
[3] RCW 10.73.110 was enacted in 1989. Laws of 1989, ch. 395, § 4. Thus, it applied to Calhoun's sentencing proceedings in 1992.
[4] The plea documents show that the State recommended a sentence of 130 months. The court was only authorized to sentence Calhoun to a maximum of 120 months. RCW 9A.20.021(1)(b). But this does not show that Calhoun was misinformed as to the direct consequences of his plea  rather, it only shows that the State was going to recommend a sentence in excess of the statutory maximum, which properly should have been rejected. The fact that the excessive sentence was not rejected by the sentencing court, and more months were added to it, does not change the fact that Calhoun was properly informed of the ten year maximum at the time of his plea.
[5] Calhoun also asserts that these invalidities and errors constitute facial invalidities that overcome the one-year time bar and allow him to challenge the voluntariness of his plea. However, as noted, these errors do not pertain to the voluntariness of Calhoun's plea. And Calhoun has cited no authority to support his contention that the invalidities and errors should further serve as a basis to allow him to withdraw his plea. In fact, courts finding facial invalidity have granted remedies directly related to the invalidity. See, e.g., In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 866-67, 877, 50 P.3d 618 (2002) (defendant's offender score was improperly calculated because his juvenile offenses had washed out; remedy was remand for re-sentencing); In re Pers. Restraint of Thompson, 141 Wash.2d 712, 719, 725, 10 P.3d 380 (2000) (judgment and sentence was invalid on its face because it showed that defendant was charged with a crime that did not exist until two years after the offense was committed; remedy was dismissal of charge without prejudice); In re Pers. Restraint of Mayer, 128 Wash.App. 694, 700-01, 117 P.3d 353 (2005) (defendant who claimed that his plea to second degree murder was involuntary because a scrivener's error in the plea and judgment and sentence listed the crime as first degree murder, thus making the documents facially invalid, was only entitled to correction of the scrivener's error). These errors were corrected at re-sentencing. In any event, we have assumed without deciding for the purposes of this case that Calhoun can overcome the one-year time bar.
[6] Because we do not find that Calhoun's plea was involuntary or that he has shown a manifest injustice, we need not reach the State's claims that compelling reasons exist not to allow Calhoun to withdraw his plea.