[No. 44344-5-I. Division One. August 21, 2000.]

THE STATE OF WASHINGTON, *Appellant*, v. CHRISTOPHER LEE WILSON, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *William M. Berg, Deputy,* for appellant.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for respondent.

ELLINGTON, J. — Christopher Wilson pleaded guilty to one count of violating the Uniform Controlled Substances Act (VUCSA) for delivery of a substance in lieu of cocaine. He

entered the plea with the understanding that he was eligible for work ethic camp and that the State would recommend his placement in the program. At sentencing, the State learned that it had mistakenly listed a prior drug conviction as possession rather than delivery. Under the corrected offender score, Wilson was ineligible for work ethic camp. Wilson moved for specific performance of the plea agreement, which the trial court granted.

Wilson had a contractual and statutory duty to disclose an accurate statement of his criminal history. The miscalculation of his offender score, and the resulting misunderstanding about his eligibility for work ethic camp were in part due to his own error regarding the accuracy of the original criminal history statement. It would therefore be unjust to permit specific performance. We reverse and remand to provide Wilson an opportunity to withdraw his plea.

## FACTS

Christopher Lee Wilson was charged by amended information with one count of violation of the Uniform Controlled Substances Act (VUCSA) for delivery of a substance in lieu of cocaine.[1] Wilson pleaded guilty as charged. As part of the plea agreement, Wilson signed a statement of defendant on plea of guilty, reciting the standard sentence range for the offense as 33 to 43 months, based on six prior drug possession convictions. The State agreed to recommend a sentence of 36 months, which was within the standard range and would qualify Wilson for work ethic camp.[2] The court accepted Wilson's plea.

At the first sentencing hearing, there was disagreement between the State and the Department of Corrections (DOC) as to Wilson's offender score. The State, believing Wilson's 1992 VUCSA conviction included two counts of

---

[1] RCW 69.50.401(c).

[2] An offender is ineligible for work ethic camp if the period of incarceration exceeds 36 months. RCW 9.94A.137(1)(a)(i).

possession and thus counted two points, calculated his score as seven, with a standard range of 33 to 43 months. The DOC's presentence report indicated an offender score of six, with a standard range of 22 to 29 months, based on the 1992 conviction involving only one count and thus counting one point towards Wilson's offender score. Wilson's counsel asked the court to sentence Wilson using an offender score of seven, as agreed. The court continued the hearing to allow the State to determine the nature of the 1992 conviction.

At the second sentencing hearing, Wilson and the State agreed that Wilson's 1992 VUCSA conviction was for delivery, counting three points, which raised Wilson's offender score to eight. With that score, Wilson was ineligible for work ethic camp. Wilson requested specific performance of the plea agreement, which the court granted. The court sentenced Wilson to 36 months and found him eligible for work ethic camp. The State appealed.

## DISCUSSION

The State contends the trial court erred in granting Wilson's motion for specific performance of the plea agreement and in imposing a sentence less than the standard range. The State noted that Wilson expressly affirmed the accuracy of the statement of his criminal history as prepared by the State, despite the erroneous listing of a conviction for possession of a controlled substance instead of for delivery.

 Plea agreements concern fundamental rights of the accused, and invoke due process considerations that require a prosecutor to adhere to the terms of the agreement.[3] A guilty plea constitutes a waiver of significant constitutional rights by the defendant including the right to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond

[3] *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997) (citing *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971)).

all reasonable doubt.[4] "If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question."[5] For a guilty plea to be valid, a defendant must understand the sentencing consequences of the agreement.[6]

Wilson argued, and the sentencing court agreed, that *State v. Miller*[7] controls. There, Miller pleaded guilty to first degree murder after being misinformed by his attorney, who had been misinformed by the prosecutor, of the possibility of a sentence less than 20 years. Before sentencing, Miller learned that there was a mandatory 20-year minimum sentence for his offense. Miller's motion to withdraw his plea was denied. The Supreme Court held that where a defendant has entered a guilty plea and signed a plea agreement based on misinformation, the defendant may choose between two remedies: (1) withdrawal of plea and trial on the original charges; or (2) specific performance of the agreement.[8] "[T]he defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy."[9] The State "bears the burden of demonstrating that the defendant's choice of remedy is unjust."[10]

---

[4] *State v. Tourtellotte*, 88 Wn.2d 579, 583, 564 P.2d 799 (1977) (holding that a prosecutor's breach of a plea agreement entitles defendant to specific performance).

[5] *Tourtellotte*, 88 Wn.2d at 584.

[6] *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988); *see also* CrR 4.2(d).

[7] 110 Wn.2d 528, 756 P.2d 122 (1988).

[8] *Miller*, 110 Wn.2d at 531. The court specifically disapproved of limiting a defendant's choice of remedy based on whether errors in plea agreements are discovered before or after sentencing. *Miller*, 110 Wn.2d at 533 (disapproving holding in *State v. Perkins*, 46 Wn. App. 333, 730 P.2d 712 (1986) that withdrawal of a plea is the only remedy for an offender score calculation error in a plea agreement discovered before sentencing).

[9] *Miller*, 110 Wn.2d at 535.

[10] *Miller*, 110 Wn.2d at 536.

Wilson also relies on *State v. Moore*,[11] where the defendant entered a plea of guilty to third degree assault. Before entering his plea, Moore disclosed a deferred sentence for a prior crime. All parties believed that because the charge for which he received a deferred sentence was dismissed, it would not be included in the calculation of his offender score.[12] However, the State later determined the prior conviction should have been included in the defendant's offender score and so advised the trial court.[13] Moore moved to withdraw his plea, which was denied.

On appeal, Moore argued a manifest injustice had occurred, requiring the withdrawal of his plea under CrR 4.2(f)[14] because he did not understand the sentencing consequences of his plea and hence, his plea was involuntary. This court agreed, holding that a defendant is entitled to withdraw his plea where he disclosed a prior conviction before the plea, his counsel and the State told him it would not count as part of his standard range, and he entered the plea with that understanding.[15]

---

[11] 75 Wn. App. 166, 876 P.2d 959 (1994).

[12] *Moore*, 75 Wn. App. at 167-68.

[13] *Moore*, 75 Wn. App. at 168.

[14] CrR 4.2(f) provides:

"The court shall allow a defendant to withdraw the defendants [sic] plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. If the defendant pleads guilty pursuant to a plea agreement and the court determines under RCW 9.94A.090 that the agreement is not consistent with (1) the interests of justice or (2) the prosecuting standards set forth in RCW 9.94A.430 -.460, the court shall inform the defendant that the guilty plea may be withdrawn and a plea of not guilty entered. If the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8."

[15] *Moore*, 75 Wn. App. at 174.

In both *Miller* and *Moore*, the defendants made full disclosure of their criminal history, but were provided erroneous legal advice. In contrast, Wilson's criminal history was not fully disclosed, and he was erroneously advised because both his defense counsel and the State were mistaken as to the nature of his 1992 conviction. Wilson himself failed to correct the error. The fault for the mistake thus lies in part with Wilson.

■■■ This distinction is significant because Wilson had both a statutory and contractual duty to provide the State with an accurate statement of his criminal history. RCW 9.94A.100 provides: "The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement. All disputed issues as to criminal history shall be decided at the sentencing hearing."[16]

In the plea agreement, Wilson agreed that the prosecuting attorney's statement of his criminal history (six VUCSA possession convictions) was "correct and complete," unless he submitted his own statement of criminal history. He did not. Wilson also agreed that:

> If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase . . . .

---

[16] *See also* CrR 4.2(e) ("If the defendant intends to plead guilty pursuant to an agreement with the prosecuting attorney, both the defendant and the prosecuting attorney shall, before the plea is entered, file with the court their understanding of the defendants [sic] criminal history, as defined in RCW 9.94A.030.").

Plea agreements are contracts.[17] "Words in a contract should be given their ordinary meaning."[18] The court will not give effect to interpretations that would render contract obligations illusory.[19]

The State contends that in the plea agreement the phrase "any additional criminal history" means "any supplemental criminal history that increases the value of the standard range." We agree. After the State obtained a copy of the judgment and sentence for the VUCSA conviction in question, the prosecutor added the delivery conviction to Wilson's criminal history statement, and deleted the inaccurate possession conviction. Under the ordinary meaning of the phrase "any additional criminal history," Wilson's delivery conviction was "additional criminal history."

We reject Wilson's argument that he satisfied his duty to disclose all of his criminal history by acknowledging a 1992 VUCSA conviction, albeit for the wrong crime. Wilson's interpretation would render meaningless the distinctions between various offenses under the Uniform Controlled Substances Act and their accompanying penalties. That the offenses of possession and delivery were both enacted under the Uniform Controlled Substances Act does not mean a defendant's acknowledgement of a VUCSA conviction satisfies his duty of disclosure. As Wilson's case demonstrates, a defendant's criminal history must include the type of VUCSA conviction because prior convictions for possession, delivery, or manufacture have varying impacts upon the defendant's offender score, and thus the standard sentence range. Such specificity is consistent with the definition of "criminal history" in the Sentencing Reform Act of 1981:

[T]he list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere. The history shall include, where known, for each conviction (a)

---

[17] *State v. Mollichi*, 132 Wn.2d 80, 90, 936 P.2d 408 (1997).

[18] *Martinez v. Miller Indus., Inc.*, 94 Wn. App. 935, 944, 974 P.2d 1261 (1999).

[19] *Taylor v. Shigaki*, 84 Wn. App. 723, 730, 930 P.2d 340 (1997).

whether the defendant has been placed on probation and the length and terms thereof; and (b) whether the defendant has been incarcerated and the length of incarceration.[20]

Under these circumstances, Wilson assumed the risk that his actual criminal history would be discovered before sentencing.

This is not to suggest that Wilson should have known of the different legal effects between possession and delivery convictions on his sentence. Rather, just as the State must fulfill its obligations under the plea agreement, so too must a defendant be held to his or her side of the bargain. He or she must agree to the plea based on his or her actual criminal history.

Where misinformation is in part the fault of the defendant or defense counsel, specific performance may be unfair. In *Miller*, the Supreme Court stated:

> There may be circumstances under which the defendant's choice of remedy would be unfair to other parties. For example, a defendant's choice of specific performance as a remedy for a plea agreement in violation of the Sentencing Reform Act of 1981 may be unfair if the violation was caused by misinformation provided by the defendant.[21]

In *State v. Skiggn*,[22] we held it would be unjust to allow a defendant specific performance of a plea agreement where defense counsel was primarily responsible for listing the wrong standard sentence range on the plea form, and the State was partially responsible for not detecting the error. We concluded that allowing Skiggn to withdraw his plea would fully protect his rights.[23]

---

[20] RCW 9.94A.030(12).

[21] *Miller*, 110 Wn.2d at 535 (citing *In re Personal Restraint of Baca*, 34 Wn. App. 468, 662 P.2d 64 (1983), which held defendant not entitled to specific performance where he affirmatively asserted he had no prior felony convictions but had committed grand larceny before his 18th birthday, was treated as an adult, and received a deferred sentence). *See also State v. Schaupp*, 111 Wn.2d 34, 41, 757 P.2d 970 (1988) ("The defendant here seeks specific performance. Schaupp was not at fault for any error in the plea and therefore that is the requisite remedy.").

[22] 58 Wn. App. 831, 838, 795 P.2d 169 (1990).

[23] *Skiggn*, 58 Wn. App. at 839.

■ We reach the same conclusion here. In fact, allowing Wilson specific performance would be an even greater injustice. It was not only defense counsel and the prosecutor who erred in compiling his criminal history. Wilson himself failed in his statutory and contractual duty to assist in that effort and disclose the accurate information, and Wilson was informed of the consequences of the discovery of any additional criminal history. No proper public policy would be served by a rule that effectively encourages defendants to underrepresent their criminal history with the hope that the prosecutor may fail to discover the error before sentencing.

Reversed and remanded.

WEBSTER and COX, JJ., concur.