[No. 79127-9.   En Banc.]

Argued September 25, 2007.   Decided January 31, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. JOHN SHANNON CODIGA, *Petitioner*.

*In the Matter of the Personal Restraint of* JOHN SHANNON CODIGA, *Petitioner*.

914

*David N. Gasch* (of *Gasch Law Office*), for petitioner.

*John D. Knodell, Prosecuting Attorney*, and *Teresa J. Chen, Deputy*, for respondent.

¶1 BRIDGE, J.[*] — John Shannon Codiga pleaded guilty to three counts of first degree child molestation, in exchange for the dismissal of two additional counts. When he entered his plea, the prosecutor and the defense agreed (1) that Codiga had two prior felonies, (2) that one of the prior felonies had washed out, and (3) that his offender score was seven. The presentence investigation report from the Department of Corrections (DOC), however, uncovered several misdemeanor convictions. Based on these misdemeanor convictions, the report concluded that neither felony had washed out and that the proper offender score was eight, thereby increasing the standard sentencing range. Codiga seeks to withdraw his guilty plea based on mutual mistake. Codiga also asserts that he did not knowingly, intelligently, and voluntarily plead guilty because the trial judge did not orally confirm that Codiga understood several of the elements of his plea.

¶2 Discovery of additional criminal history, rather than legal error, caused the increased offender score in this case.

---

[*] Justice Bobbe J. Bridge is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

Codiga's plea form contains a clause that plainly provides that Codiga assumed the risk that the discovery of additional criminal history would increase his standard sentencing range. The record also establishes that Codiga understood the nature of the charges, the application of the law to the facts in this case, and the specific consequences of his plea. We therefore affirm the Court of Appeals.

I

Facts and Procedural History

¶3 In 2004, Codiga's nine-year-old and six-year-old nieces disclosed that he had sexually abused them. The nine year old described six to eight instances, while the six year old said it had happened twice. Codiga agreed to speak with detectives and admitted to having had sexual contact with both girls. He admitted that the girls' descriptions were accurate but claimed he had had sexual contact with the older girl only three times and with the younger girl twice. Codiga signed a written statement to that effect. Codiga was charged with five counts of child molestation in the first degree, pursuant to RCW 9A.44.083. Codiga agreed to plead guilty to three counts in exchange for dismissal of the remaining two.

¶4 Codiga's written statement of the defendant on the plea of guilty (plea form) recites the elements of each count. Instead of making a statement in the plea form, Codiga agreed that the court could review the police reports and statement of probable cause to establish a factual basis for the plea. Those documents, including a statement signed by Codiga, contain facts that meet the elements of the crimes listed in the plea form.

¶5 The plea form also lists the prosecuting attorney's statement of Codiga's criminal history. It includes *only* a 1997 conviction for manufacturing marijuana by complicity. The form provides, "[u]nless I have attached a different statement, I agree that the prosecuting attorney's state-

ment is correct and complete." Clerk's Papers (CP) at 9. It defines "criminal history" as "prior convictions and juvenile adjudications or convictions, whether in this state, in federal court, or elsewhere." *Id.*[1]

¶6 Based on the listed criminal history, the plea form explains that the offender score for each count was seven, the standard range for each count would be 108-144 months, and the maximum term would be life. The form also provides:

> If I am convicted of any new crimes before sentencing, *or if any additional criminal history is discovered,* both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding upon me. *I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase* or a mandatory sentence of life imprisonment without the possibility of parole is required by law.

*Id.* (emphasis added). This language tracks language contained in the plea forms set forth in CrR 4.2(g). Because this was a sex offense committed after 2001, the plea form explains that the judge would impose a maximum term of confinement consisting of the statutory maximum sentence. The judge would also impose a minimum term of confinement within the standard range. The minimum term could then be increased by the Indeterminate Sentencing Review Board. In addition, after confinement, but before the expiration of the maximum sentence, Codiga would be subject to community custody.

¶7 The plea form reflects that the prosecutor would make no sentencing recommendation in this case. The form also explains that the judge would determine whether Codiga was eligible for the special sex offender sentencing alternative (SSOSA). The plea form recites, "I understand that if the PSI [(presentence investigation)] writer, victim,

---

[1] Notably, the language of the form purports to list all *crimes*, not just felonies. Codiga did not attach an additional statement reporting additional convictions.

or other interested party does not agree with the State's sentencing recommendations, it will not be grounds for me to withdraw from this agreement."

¶8 At the plea hearing, the following exchange took place regarding Codiga's criminal history:

> [Prosecutor]: Mr. Codiga has one prior—we believe one prior felony out of this court in '97, it's a B felony, so we believe that he has one point. There may be another Class C felony that predates that one by a year, but that one we believe would wash out.
>
> [Defense Counsel]: That's correct.
>
> [Prosecutor]: So that is not included on the statement. With that, your Honor, there is an offender score of seven. He's very close to the top end of the range. It's 108 to 144 months.

Report of Proceedings (RP) (Nov. 30, 2004) at 4-5.

¶9 At the end of the plea hearing, the judge spoke directly with Codiga. The judge recited the charges. He also confirmed that Codiga had read the plea form carefully and that he had had a full opportunity to discuss the plea with his attorney. The judge then confirmed that Codiga understood he was giving up his right to trial by jury, the right to a jury determination of facts supporting an exceptional sentence, the right to hear and see evidence against him, the right to examine witnesses against him, the right to call witnesses, the right to remain silent, the right to testify, the right to a burden of proof beyond a reasonable doubt, and the right to appeal. With regard to the anticipated sentence, the judge explained that he would not be bound by any recommendation and was free to impose any sentence allowed by law. The court then confirmed that no one had pressured Codiga to enter this plea, Codiga believed the plea to be in his best legal interest, Codiga did not need more time to consult with his lawyer, and he had no questions for the judge. Codiga pleaded guilty to each of the three counts. The judge found that the plea was knowing, intelligent, and voluntary. The judge also noted that Codiga had adopted the probable cause statement and additionally

stipulated that there was a sufficient factual basis for the plea.

¶10 When Codiga signed the plea form, he again attested:

I make this plea freely and voluntarily. . . . My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and Attachment "A." I understand them all. I have been given a copy of the "Statement of Defendant on Plea of Guilty." I have no further questions to ask of the judge.

CP at 13-14. His attorney's signature confirmed, "I have read and discussed this statement with the defendant and believe that the defendant is competent and fully understands the statement." CP at 14. Finally, the judge signed findings stating that the defendant's plea of guilty was "knowingly, intelligently and voluntarily made. Defendant understands the charges and the consequences of the plea. There is a factual basis for the plea. The defendant is guilty as charged." CP at 15.

¶11 After entering his plea, Codiga underwent evaluation for a possible SSOSA and the DOC completed a PSI. The PSI report included Codiga's lengthy criminal history. It listed the 1997 felony conviction for manufacturing marijuana by complicity and a 1996 felony conviction for attempting to elude a police officer. The rest of Codiga's prior convictions were misdemeanors, including at least three misdemeanors that occurred after, but within five years of, his last date of confinement for the 1996 felony conviction. Concluding that the 1996 felony conviction had therefore not washed out, the PSI set Codiga's offender score at eight, making the standard range 129-171 months and the community custody board range 129 months to life.[2] The PSI report recommended confinement of 129 months followed by community custody up to the maximum sentence, here life.

---

[2] The PSI assigned six points for the current offenses and one point for each prior felony.

¶12 At the sentencing hearing, the prosecutor initially reported that Codiga had one prior felony point, an offender score of seven, and a range of 108 to 144 months. The defense agreed. Then later in the sentencing hearing, the prosecutor discovered the discrepancy. When asked if he agreed with the increased offender score, defense counsel responded, "[a]t this time I would [say] no. I agree with what we originally pled to in the original [plea]." RP (Feb. 8, 2005) at 15. The court then inquired whether Codiga denied that he had been convicted of the 1996 felony or the subsequent misdemeanors. The court also asked whether Codiga still believed that the 1996 felony conviction washed out. Defense counsel responded only that they originally believed it did wash out, and admitted to the misdemeanor convictions, except for one that was still pending. Finding that the subsequent misdemeanor convictions meant that Codiga had not achieved five crime-free years after the 1996 felony, the trial judge concluded as a matter of law that the 1996 conviction had not washed out and that it resulted in an additional point on the offender score. *Id.* at 16-17; RCW 9.94A.525(2).

¶13 The court declined the request for SSOSA and imposed a sentence of 150 months for each charge to be served concurrently, which under sex offender sentencing law would become the minimum period of confinement. The maximum would be life in prison. Codiga quickly filed a motion to withdraw his guilty plea in the trial court, arguing that he was not accurately informed of the consequences of his plea because the standard range changed between his plea and his sentencing. *See* CP at 69; RP (June 9, 2005) at 3, 6; *State v. Codiga*, noted at 133 Wn. App. 1034, 2006 Wash. App. LEXIS 1329, at *3. The trial court transferred the motion to withdraw to the Court of Appeals, treating it as a personal restraint petition. Codiga also filed a direct appeal. The Court of Appeals consolidated the direct appeal and the personal restraint petition. In his appeal, Codiga also argued that the trial judge failed to establish that he understood the nature of the charges, the law in relation to the facts, or the specific consequences of his plea.

¶14 The Court of Appeals found that the written materials, including those referenced in the plea form that Codiga signed, adequately apprised him of the nature of the charges, the facts in relation to the law, and the specific consequences of his plea. *Id.* at *5-7. The Court of Appeals also concluded that the clause in the plea form assigned the risk of newly discovered criminal history to Codiga and cured any problem that may have been caused by the increase in the standard range after the plea. *Id.* at *9-10. Thus, the Court of Appeals affirmed the trial court and dismissed the personal restraint petition. *Id.* at *14. Codiga sought review in this court, which we granted.

## II

## Analysis

¶15 Due process requires that a defendant's guilty plea must be knowing, intelligent, and voluntary. *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). The criminal rules reflect this principle by dictating that a court must not accept a plea of guilty "without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). In addition, the court must be satisfied "that there is a factual basis for the plea." *Id.* There is a strong public interest in the enforcement of plea agreements when they are voluntarily and intelligently made. *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591 (2001). Between the parties, plea agreements are regarded and interpreted as contracts, and the parties are bound by the terms of a valid plea agreement. *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 309, 979 P.2d 417 (1999). The court can allow a defendant to withdraw his guilty plea "whenever it appears that the withdrawal is necessary to

correct a manifest injustice."[3] CrR 4.2(f). An involuntary plea can amount to manifest injustice. *Mendoza*, 157 Wn.2d at 587.

¶16 *Recitation of the Nature of the Charges, the Law in Relation to the Facts, and the Specific Consequences of the Plea.* Codiga contends that he was not adequately informed of the elements of the crimes to which he pleaded guilty, their relation to the facts, and the consequences of his plea. Specifically, Codiga asserts that the trial court erred when it did not orally recite the elements of the crimes and the facts that satisfied those elements during the plea hearing. He also complains that the trial court did not explain during the plea hearing each consequence of his plea, including the offender score, the standard range, the maximum sentence, and the period of community custody/placement, but instead relied on the written plea form and documents attached and referenced therein.

¶17 In *In re Personal Restraint of Keene*, 95 Wn.2d 203, 204-09, 622 P.2d 360 (1980), this court discussed the extent to which a trial judge must recite on the record the various elements of the plea. The *Keene* court concluded that the trial judge could rely on the written plea agreement where the defendant told the court he had read the agreement and that the statements contained therein were truthful. *Id.* at 206-07. The court found no due process requirement that the court *orally* question the defendant to ascertain whether he or she understands the consequences of the plea and the nature of the offense. *Id.* at 207. The *Keene* court emphasized that neither CrR 4.2 nor prior case law explicitly required *oral* inquiries. *Keene*, 95 Wn.2d at 206. Knowledge of the direct consequences of the plea can be satisfied by the plea documents. *In re Pers. Restraint of Stoudmire*, 145 Wn.2d 258, 266, 36 P.3d 1005 (2001). The

---

[3] If the motion for withdrawal is made after a judgment has been entered, it shall be governed by CrR 7.8. CrR 4.2(f). CrR 7.8(c) allows for the motion to withdraw to be treated as a personal restraint petition and transferred to the Court of Appeals. CrR 7.8 allows for relief from judgment for, among other things, mistake.

defendant must understand the facts of his or her case in relation to the elements of the crime charged, protecting the defendant from pleading guilty without understanding that his or her conduct falls within the charged crime. *Keene*, 95 Wn.2d at 209. But so long as the documents relied upon are made part of the record, the trial court can rely on any reliable source, including the prosecutor's statement of the facts if adopted by the defendant, to establish that there is a factual basis for the plea. *See id.* at 210 n.2.

¶18 In this case, the plea agreement listed the elements of each crime. CP at 7-8. Instead of submitting a written statement of the facts as part of his plea, Codiga chose to allow the court to review "police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea." CP at 14. The statement of probable cause incorporates a detective's declaration and the defendant's statement to police, both of which detail facts that satisfy the elements of the crimes. *See* CP at 3-5. The court also reiterated in the plea hearing that Codiga had adopted the probable cause statement and had stipulated that there were sufficient factual bases to support his plea. RP (Nov. 30, 2004) at 14-15. Thus, Codiga has failed to establish that he lacked an understanding of the crimes charged in relation to the factual circumstances.

¶19 Codiga argues that the trial court did not confirm orally that he understood his standard range, the maximum sentence, his offender score, his criminal history, or the period of community custody/placement. The plea form recites these elements, CP at 8-10, the offender score and standard range were discussed during the plea hearing, RP (Nov. 30, 2004) at 6, and the trial court confirmed that Codiga had reviewed the entire plea form with his attorney. *Id.* at 11. We conclude that the trial judge did not err when he relied on the plea form, its attached documents, and Codiga's assurances that he had reviewed the form with his attorney and understood it. Under these circumstances, the trial court was not required to orally confirm Codiga's understanding of the various elements of the plea.

¶20 *Direct Consequences of the Plea and Mutual Mistake.* In *Walsh*, 143 Wn.2d 1, we concluded that a plea is involuntary and can be withdrawn when the actual standard sentencing range is higher than the range stated in the plea form. *Id.* at 7-8. In *Walsh*, both the prosecutor and defense counsel calculated Walsh's offender score such that they believed his standard range would be 86 to 114 months. *Id.* at 4. The plea form then provided that the prosecutor would recommend a sentence of 86 months. *Id.* After the plea hearing, a community corrections officer calculated Walsh's offender score differently, resulting in a standard range of 95 to 125 months. *Id.* Nothing in the record showed that Walsh was ever advised or realized before sentencing that the standard range was not the one reflected in the plea agreement. *Id.* at 5. We held that because there was a mutual mistake at the time the plea was entered regarding the standard sentence range, Walsh had established that his guilty plea was involuntary. *Id.* at 8.

¶21 Then in *Mendoza*, 157 Wn.2d 582, we held that even when a mutual mistake about the proper offender score ultimately results in a *lower* standard range than anticipated by the parties when negotiating the plea, the defendant's plea is involuntary and may be withdrawn. *Id.* at 584. Thus, it seems well settled that the length of the sentence is a direct consequence of the plea and the plea may be deemed involuntary when it is based on mutual mistake regarding the offender score or the sentencing range. *See id.* at 590-91.

¶22 However, this court has not yet addressed whether the defendant can assume the risk that an offender score or a standard range has been miscalculated. The plea form in this case contained a clause indicating that *"if any additional criminal history is discovered,* both the standard sentence range and the prosecuting attorney's recommendation may increase." CP at 9 (emphasis added). Even so, the plea of guilty will be binding and the defendant cannot withdraw the plea *"if additional criminal history is discov-*

*ered even though the standard sentencing range and the prosecuting attorney's recommendation increase." Id.* (emphasis added). The State argues that by agreeing to this clause, Codiga assumed the risk that his offender score and standard range would increase because of newly discovered criminal history.

¶23 The Court of Appeals has analyzed this clause on a number of occasions. While it has, in some instances, allowed the defendant to withdraw his or her guilty plea when the plea agreement contained an incorrect offender score, the Court of Appeals has drawn a distinction between instances where the mistake was a factual one involving the defendant's criminal history and instances where the defendant completely and correctly revealed his or her criminal history, but the attorneys made a legal mistake as to the resulting sentencing range for the current crime. *See generally State v. Christen,* 116 Wn. App. 827, 67 P.3d 1157 (2003); *State v. Wilson,* 102 Wn. App. 161, 6 P.3d 637 (2000); *State v. Moore,* 75 Wn. App. 166, 876 P.2d 959 (1994). This distinction is supported by the plain language of the standard clause included in the CrR 4.2(g) forms and by the tentative nature of the offender score and standard range calculations at the time of the plea agreement. "At the time of the plea colloquy, the trial court is merely operating on the basis of the information given to it by the parties—it is not at that time making a determination that this information is correct." *State v. Kennar,* 135 Wn. App. 68, 75, 143 P.3d 326 (2006). It is not until the sentencing hearing that the trial court determines the defendant's offender score and the applicable standard sentence range. RCW 9.94A.441 (requiring that all disputes about a defendant's criminal history arising out of the plea be resolved at sentencing).

¶24 In *Moore,* 75 Wn. App. 166, Moore revealed to his counsel and to the prosecutor that he had previously received a deferred sentence for the crime of attempted indecent liberties. *Id.* at 167. But because the prior sentence was deferred, the prosecutor and defense counsel both

believed that it would not be counted in Moore's offender score. *Id.* at 167-68. At the plea hearing, everyone agreed that Moore's offender score would be zero. *Id.* at 168. Yet the PSI report from the DOC counted the deferred sentence as a prior conviction and asserted that Moore's offender score was three. *Id.* at 169. Relying on a clause similar to the one at issue here, the trial court denied Moore's motion to withdraw his plea, treating the late discovery of the legal effect of Moore's prior deferred sentence as tantamount to discovery of additional criminal history. *Id.* Division Two of the Court of Appeals reversed, reasoning that "when the defendant has disclosed a prior conviction before the plea; both counsel told him it would not count as part of his standard range; and he entered the plea with that understanding," a defendant is entitled to have his or her guilty plea set aside. *Id.* at 174. But the *Moore* court acknowledged that there might be instances in which the defendant understands that the standard range set forth in the plea agreement is necessarily tentative and that to plead guilty is to assume the risk that the standard range at sentencing will be higher than that discussed at the time of the plea. *Id.*

¶25 In contrast, in *Wilson*, 102 Wn. App. 161, the miscalculation of the defendant's offender score was due, in part, to the defendant's own error regarding the accuracy of the original criminal history. *Id.* at 163. Specifically, Wilson's criminal history at the time of the plea mistakenly listed a prior drug conviction as possession rather than delivery. *Id.* The correct characterization resulted in a higher offender score than was expected at the time of the plea. *Id.* at 163-64. Where the fault for the mistake rested in part with the defendant, Division One concluded that the delivery conviction was " 'additional criminal history' " as contemplated by the assumption of risk clause in the plea form. *Id.* at 168. The Court of Appeals found that Wilson "assumed the risk that his actual criminal history would be discovered before sentencing." *Id.* at 169. As a result, the Court of Appeals concluded that Wilson was not entitled to

specific performance of his plea.[4] *Id.* at 170. Otherwise, the court noted, defendants would be encouraged to underrepresent their criminal histories in hopes that the prosecutor would fail to discover the error. *Id.*

¶26 In *Christen,* 116 Wn. App. 827, a juvenile case, the plea agreement contained an assumption of risk clause. In that case, the trial judge at the plea hearing also orally confirmed the defendant understood that " 'if they find additional criminal history [the standard sentencing range] *could go up or down.*' " *Id.* at 830 (quoting RP (Aug. 21, 2000) at 6-7). Christen's offender score then went down from 9½ and 7½ between his plea and sentencing. *Id.* at 829-30. Division Two concluded that Christen could not have his plea set aside because he understood the fact that his offender score could change and "he expressly assumed the risk that his range might go up or down before sentencing." *Id.* at 832.

¶27 We treat plea agreements as contracts, and a basic principle of contract law is that a successful avoidance of an agreement based on mutual mistake depends upon a finding that the party seeking to avoid the agreement did not bear the risk of the mistake. 2 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS 603 (3d ed. 2004); *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.,* 104 Wn.2d 353, 362, 705 P.2d 1195 (1985). The clause at issue in this case clearly states that the defendant assumes the risk that new or additional criminal history will be discovered that increases his or her offender score. Allowing the defendant to assume this risk is both fair and reasonable because the facts of his or her criminal history should be within the defendant's knowledge. Furthermore, the defendant has a statutory and contractual duty to provide an accurate statement of criminal history. *Wilson,* 102 Wn. App. at 167 & n.16 (quoting RCW 9.94A.100 and CrR 4.2(e)).

---

[4] While the *Wilson* court still allowed the defendant to withdraw his guilty plea, it distinguished between factual and legal error. *Wilson,* 102 Wn. App. at 170.

¶28 In contrast, a defendant should *not* be charged with knowing the *legal* impact of his or her criminal history on the offender score. Where a criminal history is correct and complete, but the attorneys miscalculate the resulting offender score, then the defendant should not be burdened with assuming the risk of legal mistake. *See, e.g., State v. Miller*, 110 Wn.2d 528, 529, 756 P.2d 122 (1988) (plea agreement provided that the defendant could argue an exceptional sentence of less than 20 years, but the prosecutor and defense counsel overlooked a statutory provision that required a mandatory minimum sentence of 20 years). The plain language of the clause outlined in the plea form under CrR 4.2(g) seems appropriate; the defendant assumes only the risk that new or additional criminal history will be discovered, but he or she does not assume the risk of legal error in calculating the offender score.

¶29 In this case, Codiga contends that he accurately reported his two prior felonies to his attorney and the prosecutor, but both believed that his 1996 felony washed out. However, the State contends that the reason why the attorneys believed the 1996 felony washed out was that Codiga failed to report, and the attorneys failed to find, that he had intervening misdemeanor convictions that prevented the 1996 felony from washing out. In this sense, the new offender score was based on newly discovered criminal history or new facts, not new or misunderstood law.

¶30 We have expressed a strong preference for the enforcement of plea agreements, and the burden of showing manifest injustice sufficient to warrant withdrawal of a plea agreement rests with the defendant. *See Walsh*, 143 Wn.2d at 6; *State v. Osborne*, 35 Wn. App. 751, 759, 669 P.2d 905 (1983). The plea form asked Codiga to report "prior convictions and juvenile adjudications or convictions, whether in this state, in federal court, or elsewhere." CP at 9. Notably, the language of the plea form purports to list *crimes*, not just felonies. *Id.* It states, "[u]nless I have attached a different statement, I agree that the prosecuting attorney's statement is correct and complete." *Id.* Codiga

did not attach an additional statement. Codiga failed to list his entire criminal history, and he has not claimed that he presented his entire criminal history to his attorney or the prosecutor. Given that he assumed the risk that additional criminal history would be discovered that would impact his offender score, we conclude that he has not established a manifest injustice sufficient to warrant withdrawal of the plea.

¶31 Codiga argues that even if the assumption of risk clause in the plea form has the stated effect, the trial court erred by not orally confirming that Codiga understood its impact, and absent a direct colloquy on the subject, the clause should be ignored. *See Christen*, 116 Wn. App. at 830. However, so long as there is evidence in the record that the defendant intended to assume the risk that new or additional criminal history would increase his or her standard range, we do not insist that the trial court orally address this issue at the plea hearing. *See Stoudmire*, 145 Wn.2d at 266; *Keene*, 95 Wn.2d at 206-07.

¶32 In sum, we recognize that the assumption of risk clause at issue in this case provides that the defendant assumes the risk that new or newly discovered criminal history will result in a higher offender score and a longer standard range. Yet under this clause, the defendant does not assume the risk of miscalculation of the offender score based on a mistake as to the legal effect of a fully disclosed criminal history. In this case, the plea form failed to report Codiga's entire criminal history, including both felonies and misdemeanors, and newly discovered misdemeanor convictions resulted in a higher offender score than anticipated by the plea agreement. Codiga may not withdraw his guilty plea.[5]

---

[5] The State also argues that Codiga waived his right to challenge his sentence under the higher offender score by failing to move to withdraw his plea before the imposition of his sentence. In *Mendoza*, 157 Wn.2d at 591-92, we held that Mendoza had waived his right to withdraw his plea where he failed at sentencing *either* to object to the new sentencing recommendation *or* to move to withdraw his plea because the standard range was different than he had expected. In that case, the defendant did not object to the State's lower sentence recommendation; but in

## III

## Conclusion

¶33 The record establishes that Codiga understood the nature of the charges, the application of the law to the facts in this case, and the specific consequences of his plea, even absent oral recitation of the elements of the plea at the plea hearing. Furthermore, Codiga assumed the risk that the discovery of additional criminal history would increase his standard sentencing range. He has not shown that legal error, rather than the discovery of additional criminal history, caused the increased offender score in this case. We affirm the Court of Appeals. We deny the motion to withdraw and dismiss the personal restraint petition.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶34 CHAMBERS, J. (concurring) — I concur. I write separately to emphasize that criminal defendants should not be made to bear the risk of legal error in calculating the offender score. Calculating offender scores is a complicated business. While the accused may be in the best position to know his criminal history, how that criminal history translates into an offender score is not simple at all. A carefully worded plea agreement should not be used to shift the risk of legal error to a criminal defendant. Appellate courts should still consider whether, given the facts of each case, it would be manifestly unjust to enforce a particular plea agreement. *See State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006).

¶35 I would carefully limit the holding in this case. Under this plea agreement, I agree that John Codiga as-

---

this case, Codiga's counsel did object to the unexpectedly high offender score and sentencing range. RP (Feb. 8, 2005) at 15. After a series of questions, the trial court did not resolve the objection in Codiga's favor, but nevertheless, defense counsel did object. *Id.* at 15-16. *Either* a motion to withdraw *or* objection at sentencing is all that *Mendoza* requires. *Mendoza*, 157 Wn.2d at 591-92.

sumed the risk of the changed offender score because he was aware of and failed to disclose his additional criminal history. We should not encourage accused persons to fail to fully disclose their criminal history in the hopes that the prosecutor will not uncover it.

¶36 Moreover, prior to being sentenced, Codiga was aware that the offender score assumed at the plea hearing was incorrect, or at least in doubt. He chose to go forward with sentencing instead of moving to withdraw his plea. After knowingly taking his chances with the sentencing judge, he cannot now complain. But I reject the argument that by signing a plea agreement an accused can assume the risk of a change in the offender score due to miscalculation or legal error. Because Codiga knew he had additional criminal history that could affect his offender score and failed to disclose it, I agree that he may not now withdraw his plea.

SANDERS, J., concurs with CHAMBERS, J.