
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON, | No. 69048-5-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| LOUIS MILFORD MCGOWEN, | |
| Appellant. | FILED: October 13, 2014 |

APPELWICK, J. — McGowen appeals his conviction and felony judgment and sentence after being sentenced as a persistent offender. He argues that his due process rights were violated when the trial court found him competent to stand trial without first hearing testimony from his mental health evaluator. He contends that the trial court erred by misinterpreting his motion to substitute counsel as a request to proceed pro se. He claims he should not have been sentenced as a persistent offender, because one of the prior convictions upon which the sentence was based is facially invalid. We affirm.

## FACTS

The State charged Louis McGowen with three counts of second degree assault and two counts of felony harassment for his actions against his girlfriend.

On December 2, 2010, defense counsel requested a competency evaluation for McGowen expressing concern about his ability to rationally assist with his own defense. Defense counsel described McGowen's manic and pressured speech, paranoia, lack of eye contact, and his refusal to discuss the case beyond saying, "'I didn't do it.'" Further,

McGowen refused to see a defense psychiatrist. Overall, defense counsel argued that "there are major issues with his inability to work with us." Following the hearing, the trial court entered an order for a pretrial competency evaluation.

On December 22, 2010, Dr. Gregg Gagliardi, a psychologist at Western State Hospital, produced an abbreviated written report finding McGowen competent. On February 14, 2011, the trial court stated that based on the report and counsel's arguments, McGowen's refusal to participate was a result of willfulness, not incompetency. The court found McGowen competent to stand trial.

At this point, defense counsel asked McGowen if he still wanted them to be his lawyers. McGowen said no and maintained that, "God is my lawyer from now on. I don't know no lawyer." The trial court interpreted this as a request to proceed pro se. The court entered a written order denying McGowen's motion indicating that his attempted waiver of counsel was not knowing, intelligent, and voluntary.

During pretrial motions and jury selection, McGowen refused to wear street clothes or acknowledge the court, placed earplugs in his ears, faced the wall, and ignored his attorneys. Further, McGowen burst into a tirade during jury selection. Following this outburst, McGowen's lawyers asked that he be reevaluated for competency. The court ordered a second competency evaluation. Dr. Gagliardi again entered a report indicating that McGowen was competent to stand trial. The trial court considered Dr. Gagliardi's report, jail cell calls in which McGowen sounded lucid, McGowen's behavior, and the arguments. It then determined that McGowen was competent.

The jury found McGowen guilty of three counts of second degree assault, one count of felony harassment, and one count of misdemeanor harassment. At sentencing,

2

the State alleged McGowen was subject to the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, ch. 9.94A RCW, due to his two prior robbery convictions. It requested a sentence of life in prison without the possibility of release. McGowen challenged his 1993 King County robbery conviction, arguing that it was constitutionally invalid on its face and could not serve as a predicate conviction for a persistent offender sentence. The trial court found that McGowen was a persistent offender and imposed a sentence of life in prison without the possibility of release. McGowen appeals

## DISCUSSION

### I.  Competency Determination

McGowen argues the trial court erred in finding him competent to stand trial without observing the procedural safeguards mandated by due process and statute. Specifically, he contends the trial court failed to hold a formal evidentiary hearing in which Dr. Gagliardi, the psychologist who submitted a report finding McGowen competent, could be examined.

The trial court's determination that an accused is competent to stand trial will not be reversed absent a manifest abuse of discretion. State v. Crenshaw, 27 Wn. App. 326, 330, 617 P.2d 1041 (1980), aff'd, 98 Wn.2d 789, 659 P.2d 488 (1983). This court normally defers to the trial court's competency determination, because the trial court can personally observe the individual's behavior and demeanor. Id. At competency hearings in Washington, all that due process requires is compliance with the mandates of chapter 10.77 RCW. State v. Coley, 180 Wn.2d 543, 558-59, 326 P.3d 702 (2014).

When there is reason to doubt a defendant's competency, the trial court must appoint experts and order a formal competency hearing. See RCW 10.77.060(1)(a); State v. Marshall, 144 Wn.2d 266, 278, 27 P.3d 192 (2001) abrogated on other grounds by State v. Sisouvanh, 175 Wn.2d 607, 290 P.3d 942 (2012). The expert conducting the evaluation must provide his or her report and recommendation to the court in which the criminal proceeding is pending. RCW 10.77.065(1)(a)(i). Experts or professional persons who have reported may be called as witnesses at any proceeding. See RCW 10.77.100 (emphasis added).

Here, the trial court properly followed the statutory procedures for determining competency as outlined in chapter 10.77 RCW. The court ordered that McGowen undergo a psychological evaluation and that the expert provide a written report. After receiving the report by Dr. Gagliardi, the trial court held a hearing on McGowen's competency. The court reviewed two separate competency evaluation reports made by Dr. Gagliardi. The trial court noted that on both occasions Dr. Gagliardi found McGowen competent to stand trial.

Moreover, the trial court considered additional evidence regarding his competency. It listened to telephone calls made by McGowen from jail in which he showed that he had the ability to communicate effectively with a friend. Further, the trial court had the ability to observe McGowen's appearance and conduct in court proceedings. At the competency hearing, the court heard argument from the parties. McGowen did not attempt to call Dr. Gagliardi as a witness. He cites no authority for his claim that his due process rights were violated by the absence of testimony from Dr. Gagliardi, testimony which he had the power to obtain.

4

The trial court afforded McGowen all of the necessary protections in chapter 10.77 RCW. Therefore, there was no violation of due process and the trial court did not abuse its discretion in finding McGowen competent.

## II. McGowen's Motion to Substitute Counsel

McGowen argues that the trial court erred in denying his request to discharge counsel in violation of his Sixth Amendment right to counsel. He claims that the trial court improperly treated this motion—which he characterizes as a motion to substitute new counsel—as a request to proceed pro se and consequently applied the wrong legal standard.

Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion. State v. MacDonald, 138 Wn.2d 680, 696, 981 P.2d 443 (1999). This court reviews both a denial of a motion to discharge counsel and a denial of a request to proceed pro se for abuse of discretion. See State v. Stenson, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997); State v. Breedlove, 79 Wn. App. 101, 106, 900 P.2d 586 (1995).

In determining whether to grant a motion to substitute counsel, the trial court must consider the following factors: (1) the extent of the conflict between the attorney and defendant, (2) the adequacy of the inquiry, and (3) the timeliness of the motion. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1 (2001). In deciding whether to grant a request to proceed pro se, the court will consider whether the request to waive counsel is knowingly and intelligently made, unequivocal, and timely. Breedlove, 79 Wn. App. at 106. The trial court relied on McGowen's statements in making its determination. While the parties were in court, defense counsel asked McGowen if he still wanted his

5

current defense counsel to represent him. McGowen responded by saying, "I don't know no lawyer" and "God is my lawyer from now on." Defense counsel then characterized McGowen's motion as a "pro se motion to discharge counsel." McGowen agreed with that characterization. McGowen clarified his position later in the proceeding when he stated, "I don't want these people representing me. God is my representative."

The trial court reasonably interpreted McGowen's statements as a request to proceed pro se. First, McGowen never requested the appointment of a new lawyer or made any indication that he wanted a new lawyer if the trial court were to discharge his counsel at the time. Further, McGowen's statements indicate that he no longer wanted his attorneys to represent him, and preferred God to represent him. God was not a viable option for legal representation. The trial court did not abuse its discretion by characterizing the request as a request to proceed pro se.

The trial court applied the proper legal standard in determining whether McGowen made a knowing and intelligent decision to waive counsel and proceed pro se. During McGowen's conversation with the judge, he said, "I don't know what I'm charged with." Further, in response to the judge's question about whether he understood the maximum penalty for his crimes, he replied, "No, I don't understand that either." In light of McGowen's purported confusion, the trial court did not abuse its discretion by denying his request to proceed pro se.

III. Persistent Offender

McGowen argues that his life sentence without possibility of release must be vacated, because one of the prior convictions upon which his current sentence is based is facially invalid.

McGowen primarily bases his argument on the alleged invalidity of his 1993 King County robbery sentence. Under the POAA, a defendant who commits a "most serious offense" faces a mandatory life sentence without the possibility of parole if he has two prior convictions for "most serious offenses." RCW 9.94A.030(32), (37)(a); RCW 9.94A.570. A defendant's criminal history consists of the defendant's "prior convictions . . . whether in this state, in federal court, or elsewhere." RCW 9.94A.030(11). But, a prior conviction that is constitutionally invalid on its face may not be considered in a sentencing proceeding. State v. Ammons, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). A conviction is constitutionally invalid on its face if without further elaboration it evidences infirmities of a constitutional magnitude. Id. at 188.

McGowen argues that the judgment and sentence for the 1993 robbery is invalid on its face, because it reflects a miscalculation of the offender score and corresponding standard range sentence. He claims this is so, because the trial court miscalculated his 1993 offender score by improperly including a previous Colorado robbery conviction. McGowen contends that the Colorado robbery should not have been included, because it is not comparable to a Washington robbery offense.[1]

But, in defining a persistent offender, it is the validity of the prior conviction that is determinative of that status—not the validity of the sentence. See RCW 9.94A.030(37)(a)(ii). A "persistent offender" is one who has been convicted on at least two prior occasions of a "most serious offense." Id. The act defines "conviction" as, "an

---

[1] After McGowen was convicted of another robbery in Washington in 1997, this court ruled that the Colorado robbery conviction was not comparable to a Washington robbery for offender score calculation purposes. State v. McGowen, noted at 95 Wn. App. 1072, 1999 WL36405, at *1. McGowen contends that this later ruling is evidence that the Colorado robbery should not have been included in his 1993 offender score.

adjudication of guilt . . . and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." RCW 9.94A.030(9). Therefore, even if McGowen were able to demonstrate that his 1993 sentence was invalid because of an improperly calculated offender score, he would still need to show evidence that the underlying robbery conviction on its face evidences infirmities of a constitutional magnitude. See Ammons, 105 Wn.2d at 188.

McGowen does challenge the validity of the conviction itself by claiming that he was misinformed of the standard sentencing range when he pleaded guilty. He contends that this resulted in an involuntary and constitutionally infirm guilty plea. Due process requires that a guilty plea be entered knowingly, intelligently, and voluntarily. State v. Ross, 129 Wn.2d 279, 284, 916 P.2d 405 (1996).

A plea may be involuntary when it is based on a mutual mistake regarding the offender score or standard sentencing range. In re Pers. Retraint of Codiga, 162 Wn.2d 912, 925, 175 P.3d 1082 (2008). McGowen relies on State v. Mendoza, 157 Wn.2d 582, 589, 141 P.3d 49 (2006), to support the proposition that his guilty plea was involuntary and unconstitutional. In Mendoza, the court held that where a guilty plea is based on misinformation regarding the direct consequences of the plea, the defendant may withdraw the plea based on involuntariness. Id. at 584. Mendoza's misunderstanding of his sentencing consequences occurred because of an error in calculation out of his control. Id. at 584-85. A prior conviction that was listed and counted as an adult felony conviction should have been counted as a juvenile felony conviction. Id.

Mendoza's offender score was miscalculated based on prior convictions that were brought to the State's attention at the time of the offender score calculation, and Mendoza relied on that error when making his guilty plea. Id. This was not the case here.

When McGowen entered his guilty plea, he failed to disclose his earlier robbery convictions, or any criminal history whatsoever. Where the defendant fails to disclose criminal history to the State, he assumes the risk that it will be discovered prior to sentencing and used to increase his offender score and standard sentencing range. Codiga, 162 Wn.2d at 929-30. Further, at the time of his plea, McGowen agreed that:

> [I]f any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase.

McGowen's plea agreement listed an offender score of "0." McGowen failed to disclose his criminal history and knowingly, intelligently, and voluntarily entered a plea with the understanding that his sentencing range was subject to change should the State discover additional criminal history.

Even assuming the trial court improperly included the Colorado robbery conviction during McGowen's 1993 sentencing, this error would not affect the validity of the plea he entered. McGowen fails to identify a constitutional infirmity in the 1993 conviction. The trial court did not err in considering this conviction when sentencing McGowen in the present case.

The trial court did not abuse its discretion in finding McGowen competent. The court did not err in characterizing McGowen's statements as a motion to proceed pro se

9

and denying that motion. The court properly sentenced McGowen as a persistent offender. We affirm.

Appelwick, J.

WE CONCUR:

Schindler, J.                    Cox, J.