# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48787-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DEENA M. SANDBERG, | |
| Appellant. | |

MAXA, A.C.J. – Deena Sandberg appeals her third degree assault conviction, claiming that the trial court erred in denying her motion to withdraw her guilty plea. The record does not show that Sandberg understood an essential element of the crime – that her actions had to be intentional and not accidental. We hold that based on this record, allowing Sandberg to withdraw her plea was necessary to correct a manifest injustice.[1] Accordingly, we reverse Sandberg's conviction and remand to allow Sandberg to withdraw her guilty plea.

## FACTS

On August 1, 2014, Sandberg and her husband went to a casino in Shelton. Sandberg became disruptive because other people were sitting in her assigned seat. A casino supervisor

---

[1] Sandberg also argues that the trial court erred in denying her motion to withdraw her guilty plea because she was not informed of a direct and a collateral consequence of her plea. Because we reverse on other grounds, we do not address these arguments.

asked Sandberg to step outside to resolve the issue, but she refused. Eventually, a law enforcement officer arrived and when Sandberg again refused to leave, the officer physically escorted Sandberg out of the building. Sandberg tried to get away and dug her fingernails into the officer's arm, causing it to bleed.

The State charged Sandberg with third degree assault. The charging information stated that Sandberg "did intentionally assault a law enforcement officer or other employee of a law enforcement agency who was performing her official duties at the time of the assault." Clerk's Papers (CP) at 73.

Sandberg agreed to plead guilty in exchange for the State not pursuing a bail jumping charge, and agreeing to request a first time offender option. The plea statement listed the elements of the offense "as in the information." CP at 63. Sandberg's statement of what made her guilty of the crime was: "On 8-1-14 in Mason County, I assaulted a law enforcement officer . . . who was performing official duties." CP at 70.

At the plea hearing, the trial court asked Sandberg whether she understood the offense with which she was charged:

> THE COURT: Do you understand what it is you're pleading guilty to? In other words, what conduct you did that the State alleges constitutes the crime of assault in the third degree?
>
> [DEFENSE COUNSEL]: The third, the police officer. Assaulting the police officer - yeah.
>
> MS. SANDBERG: Yeah.
>
> THE COURT: I'm sorry, Ma'am?
>
> MS. SANDBERG: Yes, *on accident*.
>
> THE COURT: Okay.

2

MS. SANDBERG: *Not on purpose, on accident I assaulted* a . . .

THE COURT: Okay. Let me explain it.

MS. SANDBERG: They grabbed me leaving the casino, so.

THE COURT: Okay. I just need to explain something to you. In order for a court to accept a plea the Court has to find that the plea is knowingly, willful and voluntarily done, so I have to make a finding that you know what it is you're pleading guilty to, in other words, okay, that's something the Court has to ask you about, alright. Just so you know.
    So it's assault in the third degree, and do you understand that by pleading guilty there'll be no trial and no appeal of the conviction?

[DEFENSE COUNSEL]: Do you understand that?

MS. SANDBERG: Yes.

Report of Proceedings (RP) at 14-15. The trial court then questioned Sandberg about whether she understood that she was giving up her trial and appeal rights, and understood the proposed sentence and community custody, the maximum sentence it could impose, the mandatory costs and fees, and her right to own or possess a firearm.

Next, the trial court asked for Sandberg's plea and Sandberg plead guilty. She also orally confirmed her description in the plea agreement of how the crime occurred. Sandberg then represented that she had signed the plea agreement, that she had enough time to talk with defense counsel about it, that defense counsel went over the plea form with her, and that it was her choice to plead guilty. The trial court then found that Sandberg's plea was knowingly, intelligently, and voluntarily given.

During sentencing two months later, the trial court asked Sandberg if she had anything to say and Sandberg responded that "[i]t was purely a accident. I was having a grand – a petit mal seizure. . . . And it was, like, truly an accident. I didn't mean to dig my nails into her, only

3

'cause I was having a seizure, you know."[2] RP at 24. The trial court perceived that Sandberg was looking to withdraw her guilty plea, and after a break Sandberg confirmed that she would like to petition the court to withdraw her plea. As a result, the trial court allowed defense counsel to withdraw, appointed new defense counsel, and rescheduled sentencing to allow Sandberg an opportunity to file a motion to withdraw her guilty plea.

Sandberg subsequently filed a motion to withdraw her guilty plea. The trial court denied Sandberg's motion. The court then imposed the agreed first time offender sentence.

Sandberg appeals the trial court's denial of her motion to withdraw her guilty plea.

ANALYSIS

A.    LEGAL PRINCIPLES

Due process requires that a defendant's guilty plea be knowing, intelligent, and voluntary. *State v. Robinson*, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011). Under CrR 4.2(d), a trial court cannot accept a guilty plea without making a determination that the plea was made "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea."[3] *See also Robinson*, 172 Wn.2d at 791-92.

In order to understand the nature of the charge, "[t]he defendant must understand the facts of his or her case in relation to the elements of the crime charged, protecting the defendant from pleading guilty without understanding that his or her conduct falls within the charged

---

[2] Medical records showed that Sandberg did have seizures and, in fact, had a seizure in the courthouse that caused her to miss a hearing.

[3] CrR 4.2(d) also requires the trial court to be "satisfied that there is a factual basis for the plea." Sandberg did not argue that the record failed to identify a factual basis for an intentional assault, so we do not address this issue.

crime." *State v. Codiga*, 162 Wn.2d 912, 923-24, 175 P.3d 1082 (2008). This requirement means that at a minimum, defendant must be aware of the requisite state of mind necessary to constitute the charged crime. *In re Pers. Restraint of Montoya*, 109 Wn.2d 270, 278, 744 P.2d 340 (1987). But in a plea hearing the trial court is not required to orally recite the elements of each crime or the facts that satisfy those elements, and is not required to orally question the defendant to ascertain whether he or she understands the nature of the defense. *Codiga*, 162 Wn.2d at 924. Instead, the trial court can rely on the written plea agreement if the defendant confirms that he or she read the agreement and that its statements were true. *Id.*

CrR 4.2(f) states that the trial court shall allow a defendant to withdraw a guilty plea before entry of judgment "whenever it appears that the withdrawal is necessary to correct a manifest injustice." *See generally Robinson,* 172 Wn.2d at 791-92, 794. Although "manifest injustice" has not been definitively defined, it includes situations where the defendant's guilty plea was not knowing, intelligent, and voluntary. *State v. A.N.J.*, 168 Wn.2d 91, 119, 225 P.3d 956 (2010). The defendant bears the burden of proving a manifest injustice. *State v. Quy Dinh Nguyen,* 179 Wn. App. 271, 282-83, 319 P.3d 53 (2013).

The fact that a defendant moves to withdraw a guilty plea before sentencing does not affect the manifest injustice standard. *A.N.J.*, 168 Wn.2d at 106. However, a defendant's claim that he or she did not understand the nature of the charge is more credible if a motion to withdraw a guilty plea is made before sentencing rather than after receiving an unfavorable sentence. *See id.* at 107.

We review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A trial court abuses its

discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

B.      MISUNDERSTANDING THE INTENT ELEMENT OF ASSAULT

The State charged Sandberg under RCW 9A.36.031(1)(g), which states that a person is guilty of third degree assault if he or she assaults a law enforcement officer who was performing his or her official duties. Although the criminal code does not define "assault" as used in RCW 9A.36.031(1)(g), to obtain a conviction under that section the State must prove that the defendant intended to commit an assault against the officer. *State v. Brown*, 140 Wn.2d 456, 469-70, 998 P.2d 321 (2000).

Consistent with this intent requirement, the information alleged that Sandberg "did intentionally assault" a law enforcement officer. CP at 73. The plea statement stated that the elements of the crime were "as in the information." CP at 63. Sandberg confirmed that her counsel had gone through the plea form with her. In certain cases, this record could be sufficient to establish that Sandberg understood that intent was an element of the crime to which she was pleading guilty. *See Montoya*, 109 Wn.2d at 278 (holding that because defense counsel read the information to the defendant, the defendant was given adequate notice of the elements of the crime).

However, three circumstances indicate that the record here was not sufficient to show that Sandberg understood that third degree assault required intentional conduct. First, the plea statement did not list intentional conduct as an element of the crime. Instead, the plea form simply stated that the elements were "as in the information." CP at 63. Further, although Sandberg confirmed that she had gone over the form with defense counsel, nothing in the record

shows that Sandberg was shown or told the contents of the information. Even defense counsel's subsequent declaration did not expressly state that he informed Sandberg of the elements of third degree assault.

Second, Sandberg clearly stated at her plea hearing that her conduct was accidental. When the trial court asked whether she understood what she was pleading guilty to and specifically referenced third degree assault, Sandberg answered "yes" but then added "on accident." RP at 14. She then tried to explain: "Not on purpose, on accident I assaulted a . . . ." RP at 14. At that point the trial court interrupted. But instead of clarifying with Sandberg that the State had to prove intentional conduct in order to convict her, the court began discussing other issues.

Third, at the first sentencing hearing Sandberg again emphasized that her conduct had been accidental and informed the trial court that her conduct was caused by a seizure. Although the court recognized a problem, it again did not attempt to determine whether Sandberg knew that the State was required to prove intentional conduct to convict her. And after conferring with her counsel, Sandberg immediately informed the court that she wished to withdraw her guilty plea. This is not a situation where Sandberg attempted to withdraw her plea only after "roll[ing] the dice on a favorable sentence" and being disappointed. *A.N.J.*, 168 Wn.2d at 107.

Nothing in the record shows that Sandberg understood the facts of her case in relation to the elements of the third degree assault. Instead, the record shows that Sandberg had a misunderstanding of the elements of the offense and that neither the trial court nor anyone else corrected her misunderstanding before she entered the guilty plea. Therefore, Sandberg did not

7

No. 48787-0-II

make a knowing, voluntary, and intelligent decision to plead guilty and accepting her withdrawal of the guilty plea was necessary to prevent a manifest injustice.

We hold that based on the record in this case, the trial court erred in denying Sandberg's motion to withdraw her guilty plea.

## CONCLUSION

We reverse Sandberg's conviction of third degree assault, and we remand to the trial court to allow Sandberg to withdraw her guilty plea.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

ZEE, J.

SUTTON, J.