104 P.3d 737 (2005)
STATE of Washington, Respondent,
v.
Sean Davis LATHROP, Appellant.
No. 22667-1-III.
Court of Appeals of Washington, Division Three, Panel Eight.
January 13, 2005.
*738 Susan M. Gasch, Spokane, WA, for Appellant.
Kevin M. Korsmo, Spokane, WA, for Respondent.
BROWN, J.
In January 2000, in return for a charge reduction from second degree murder and a 90-month sentencing recommendation, Sean D. Lathrop pleaded guilty to first degree manslaughter. Mr. Lathrop was sentenced to 90 months. Based upon intervening law lowering the standard range, he moved to lower his sentence in a CrR 7.8 motion that was transferred here. After a concession, a fact dispute remained regarding the State's recommendation and we remanded for a reference hearing. The trial court found the negotiations were specifically for 90 months, declined to sentence anew, and corrected the standard range listed in the Judgment and Sentence. On appeal, Mr. Lathrop cites trial court error in deciding the intended recommendation, failing to allow allocution, and denying him the opportunity to withdraw his plea. We conclude the evidence supports the trial court's finding that the parties intended the State's 90-month recommendation. Under these facts, allocution was not mandatory. Lastly, we decide Mr. Lathrop was not denied the opportunity to withdraw his plea. Accordingly, we affirm.

FACTS
In January 2000, per plea negotiations, Mr. Lathrop's original charge of second degree murder was reduced to first degree manslaughter. At the plea hearing, the State and Mr. Lathrop jointly recommended a 90-month sentence as a stipulated below range sentence based upon a 95 to 125 month standard range. Specifically, the statement related the prosecutor will make "[a] joint recommendation to an exceptional sentence downward of 90 months incarceration, which is 5 months below the low end of the standard sentencing range." Clerk's Papers (CP) at 3-4. The judgment and sentence showed an offender score of "1" and a standard range computed for an offender score of two, "95-125". CP at 16. The court entered findings of fact and conclusions of law accepting the stipulation and ordered a 90-month sentence.
Mr. Lathrop's later pro se CrR 7.8 motion raised an intervening washout problem and urged a lower sentence. The superior court transferred his motion to this court as a personal restraint petition. Based upon a conceded offender score of one based upon the intervening case law, our Chief Judge remanded the CrR 7.8 motion back to the superior court under RAP 16.11 for a reference hearing and decision considering the *739 corrected standard range. The State argued the negotiations were for a fixed 90-month sentence; Mr. Lathrop argued the intent was five months less than the standard range.
On remand, the sentencing court treated the CrR 7.8 issues as cross motions to clarify the previous judgment and sentence. In the presence of Mr. Lathrop and his current and former counsel, the court considered the deputy prosecutor's certificate and Mr. Lathrop's materials, including "work evaluations from Annette Hillman, a document called Mitigating Factors, three accomplishments for defendant's life experience while incarcerated and five Release Plans and Community Support Plans." Record of Proceedings (RP) at 4-5. Further, the court considered a letter from Mr. Lathrop's grandmother indicating Mr. Lathrop was "developing" into a good citizen and deserved a sentence of "81 months." RP at 5. Mr. Lathrop was not invited to personally speak, but did respond to the court's questions.
Mr. Lathrop's new counsel argued Mr. Lathrop was "looking at the low end of the standard range." RP at 5. Responding, the deputy prosecutor argued the negotiations were, as certified, specifically for a 90-month recommendation. Mr. Lathrop's former counsel reluctantly supported that argument: "My file reflects that our negotiations involved a determinate amount of time rather than based on ranges." RP at 7.
First, in Mr. Lathrop's motion to determine the months negotiated in the plea agreement, the court decided the parties negotiated for a specific 90-month sentence: "I am satisfied from listening to [the deputy prosecutor] and [Mr. Lathrop's former counsel] that the agreement was for 90 months. It just so happened that was below the standard range." RP at 8. The court for "good cause" adopted its previous findings of fact and conclusions of law and found, "the plea agreement to be 90 months negotiated between the parties, not 5 months below the standard range." CP at 34.
Second, in deciding the State's motion for an "Order Clarifying The Judgment & Sentence[,]" the court found "good cause exists" and ordered "[section] 2.3 of the judgment and sentence be amended to reflect an offender score of one with a sentence range of 86-114 months." CP at 35. The "Order Clarifying The Judgment and Sentence" was entered December 23, 2003. CP at 35.
Mr. Lathrop appealed.

ANALYSIS

A. Allocution
The issue is whether the trial court erred by not inviting Mr. Lathrop to give allocution at the reference hearing. We conclude the trial court did not err.
RCW 9.94A.500(1) partly provides: "The court shall ... allow arguments from ... the offender ... as to the sentence to be imposed." Our Supreme Court has placed limits on this right. See In re Pers. Restraint of Benn, 134 Wash.2d 868, 893, 952 P.2d 116 (1998) (court may limit argument to just an expression of remorse and request for leniency); State v. Lord, 117 Wash.2d 829, 897, 822 P.2d 177 (1991) (allocution does not permit a defendant to testify about facts and avoid cross examination).
Initially, the State argues Mr. Lathrop is barred from raising the new issue. The general rule is that an appellate court "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Allocution is purely statutory and does not fall within the exception entitling an appellant to raise a constitutional issue for the first time on appeal. In re Pers. Restraint of Echeverria, 141 Wash.2d 323, 335, 6 P.3d 573 (2000). Even so, the hearing decided two motions, one to clarify Mr. Lathrop's judgment and sentence to reflect the correct standard range and another to determine the number of months agreed for recommendation. Thus, the hearing was not like a sentencing hearing under RCW 9.94A.500(1). Therefore, allocution was not mandatory. Moreover, Mr. Lathrop presented his views through new counsel and submitted a multitude of materials in mitigation that resembled an allocution plea for mercy.

B. Alternative Remedies
The issue is whether the trial court erred in conducting its remand proceedings *740 without allowing Mr. Lathrop to elect between plea withdrawal and specific performance.
A guilty plea is valid only if the defendant understands the sentencing consequences of the agreement. State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988). When a defendant enters a plea agreement based on misinformation affecting the sentencing consequences and the defendant later becomes aware of this misinformation, he or she may choose to either withdraw the plea or demand specific performance of the agreement. Id. If the defendant elects specific performance, the prosecutor must make the recommendation he or she agreed to in the original plea agreement. State v. Harrison, 148 Wash.2d 550, 557, 61 P.3d 1104 (2003).
The confusion regarding Mr. Lathrop's standard range stems from sentencing changes made by the legislature and interpreted by our Supreme Court. Before 1997, when an offender older than 23 committed a crime, all prior juvenile class B or C felonies were said to wash out and were not included in the offender score calculation. State v. Dean, 113 Wash.App. 691, 693, 54 P.3d 243 (2002) review denied, 149 Wash.2d 1009, 67 P.3d 1097 (2003). (citing former RCW 9.94A.030(12)(b) (1996) and State v. Smith, 144 Wash.2d 665, 670-71, 30 P.3d 1245 (2001)),
A 1997 amendment to the Sentencing Reform Act eliminated the wash out provision. Laws of 1997, ch. 338, §§ 2, 5; Dean, 113 Wash.App. at 693, 54 P.3d 243. Consequently, after the 1997 amendment all prior juvenile adjudications were to be used to calculate an offender score. Dean, 113 Wash.App. at 693, 54 P.3d 243. Mr. Lathrop was sentenced in January 2000 with two juvenile convictions included in his criminal history.
In June 2000, the legislature enacted RCW 9.94A.345. Laws of 2000, ch. 26, §§ 1, 2; Dean, 113 Wash.App. at 695, 54 P.3d 243. This provision states "[a]ny sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." RCW 9.94A.345. More specifically, the statutory note accompanying the provision indicates "[a] decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed." RCW 9.94A.345 Intent  2000 c. 26; Dean, 113 Wash.App. at 695, 54 P.3d 243.
The Supreme Court then decided Smith. There, the Court examined the effect of the 1997 amendment on the juvenile adjudication wash out provisions in former RCW 9.94A.030(12)(b). Noting that RCW 9.94A.345 does not explicitly command retroactive application of the 1997 amendment, the Smith court reasoned the issue remained "whether the law in effect when the current offense was committed [was] retroactive or prospective." Smith, 144 Wash.2d at 673, 30 P.3d 1245. Finding no language showing a legislative intent for the 1997 amendment to apply retroactively, the Smith court concluded the defendants' prior juvenile adjudications remained washed out for the purposes of the current offender scores. Id. at 674-75, 30 P.3d 1245.
After the Court decided Smith, Mr. Lathrop filed his pro se CrR 7.8 motion in the superior court requesting the court sentence "using a correct offender score that excludes his juvenile convictions." CP at 61-62. Mr. Lathrop never mentioned withdrawing his guilty plea. And, withdrawal was never mentioned at the remand hearing. There, Mr. Lathrop argued for five months below the new standard range based upon his incorrect view that the State was bound to make that recommendation, and the sentencing court would be somehow bound by the recommendation. Therefore, Mr. Lathrop's argument reflects his desire for specific performance.
Mr. Lathrop's relies on State v. Walsh, 143 Wash.2d 1, 17 P.3d 591 (2001). In Walsh, the appellate court allowed Mr. Walsh to withdraw his plea after it found (1) Mr. Walsh "was never even offered an opportunity to withdraw his plea or seek specific performance"; (2) "the new standard range was not brought to his attention at the sentencing hearing"; and (3) the record did not support the State's contention that Walsh had elected specific performance. Walsh, 143 Wash.2d *741 at 7, 9, 17 P.3d 591. Here, the record shows Mr. Lathrop's opportunity to elect, his knowledge of the corrected standard range, and his specific performance arguments. Thus, Walsh is distinguishable.
Arguendo, Mr. Lathrop asserts he is entitled to a mitigated exceptional sentence five months below the standard range. We disagree. Mr. Lathrop fails to show an abuse of sentencing discretion.
Plea agreements are interpreted as contracts. State v. Sledge, 133 Wash.2d 828, 838, 947 P.2d 1199 (1997). We apply contract principles in construing contracts. State v. Wheeler, 95 Wash.2d 799, 803, 631 P.2d 376 (1981). A prime object of contract interpretation is to ascertain and give effect to the parties' intent. In re Marriage of Litowitz, 146 Wash.2d 514, 528, 48 P.3d 261, 53 P.3d 516 (2002), cert. denied, 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). We review "`the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.' "Id. (quoting Scott Galvanizing, Inc. v. N.W. EnviroServices, Inc., 120 Wash.2d 573, 580-81, 844 P.2d 428 (1993)). Ambiguities in contracts are resolved against the drafter. State v. Skiggn, 58 Wash.App. 831, 838, 795 P.2d 169 (1990).
First, the agreement supports the trial court's finding that the parties intended a determinant 90-month recommendation, not a variable number tied to the bottom of the standard range. The relevant plea language shows a 90-month recommendation followed by a nonrestrictive adjective clause set off by a comma:
A joint recommendation to an exceptional sentence downward of 90 months incarceration, which is 5 months below the low end of the standard sentencing range as the court determines my offender score to be.
CP at 3-4 (bold in original, italics added). A restrictive adjective clause would not contain a grammatically incorrect comma and read, "... that is 5 months below the low end of the standard sentencing range as the court determines my offender score to be." Although "which" and "that" are both relative pronouns, "that" is used solely with restrictive clauses while "which" is usually preferred in nonrestrictive clauses.
Second, both the prosecutor (by certificate and in argument) and Mr. Lathrop's original defense attorney agreed that the plea agreement negotiations were for a determinate 90-month sentence. While Mr. Lathrop's new counsel argued the agreement was for five months below the standard range, credibility determinations are left to the trier of fact. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
Third, Mr. Lathrop's attorney drafted the plea statement, so any ambiguity would be resolved against Mr. Lathrop. Even if specific performance required the prosecutor to recommend five months below the stand range, the court retained the discretion to enter whatever sentence it deemed appropriate. See State v. Henderson, 99 Wash.App. 369, 378, 993 P.2d 928 (2000) (holding that except in certain circumstances not relevant here, specific performance of a plea agreement means that the prosecutor is required to recommend what he or she agreed to recommend, but the court retains discretion to enter an appropriate disposition).
In sum, Mr. Lathrop never requested plea withdrawal, which would have led to reinstatement of the second degree murder charge. Instead, he opted to pursue a new sentencing tied to the corrected standard range based upon his failed theory that the State was required to make a recommendation for five months below the standard range. If Mr. Lathrop's strategy had been successful, the State would have, at most, been required to make that recommendation at a new sentencing hearing. The trial court did not abuse its discretion in declining Mr. Lathrop's invitation to sentence anew. Nothing suggests the trial court abused its original sentencing discretion or otherwise abused its discretion in adhering to its original sentencing length decision. Given all, we *742 hold the trial court did not err in sentencing Mr. Lathrop to 90 months.
Affirmed.
WE CONCUR: SWEENEY, A.C.J., and KURTZ, J.