# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48143-0-II |
| Respondent, | |
| v. | |
| DANNY ALLEN WING, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Danny Wing appeals his judgment and sentence for first degree manslaughter—domestic violence and third degree assault of a child—domestic violence, claiming his plea to the charges was involuntary. Part of Wing's plea agreement required him to provide the State with truthful information, and provided that if Wing failed two polygraph tests the State would be permitted to supplement the charges with additional "enhancements." After Wing failed two polygraph tests and was found in violation of the plea agreement, the State added two aggravating factors to which Wing stipulated. On appeal, Wing argues that the State breached the plea agreement by adding the aggravating factors after he failed his polygraph tests, and his guilty plea was premised on improperly calculated offender scores.[1] We hold that the State did not breach the plea agreement, but that Wing's guilty plea was premised on an incorrect offender score for the third degree assault of a child conviction, rendering the plea involuntary. Consequently, we reverse and remand to allow Wing to withdraw his guilty plea.

---

[1] In a supplemental brief, Wing also seeks waiver of appellate costs. But because we reverse and remand, the State is not entitled to costs.

FACTS

In 2014, Wing and his wife began caring for a three-year-old boy because his young mother could not adequately care for him. Within three months of living with the Wings, the child died from physical abuse inflicted upon him by the Wings.

On November 7, 2014, the State charged Wing with homicide by abuse, and in the alternative, first degree manslaughter, each with two aggravating factors: (1) the defendant used his position of trust or confidence to facilitate the commission of the crime, and (2) the defendant should have known the victim was particularly vulnerable or incapable of defense.

Wing and the State entered into a "Proffer Agreement" in which the State agreed to dismiss with prejudice the homicide by abuse charge and the two aggravating factors, and charge Wing with first degree manslaughter—domestic violence and third degree assault of a child—domestic violence. As part of the agreement, Wing agreed to provide the State with truthful information about the child's abuse and death. The agreement permitted the State to "re-file the [sentencing] enhancements" if Wing failed two polygraph tests.[2] Clerk's Papers (CP) at 55. As part of his plea, Wing admitted that he recklessly caused the death of the child by failing to obtain medical care for injuries the child sustained while a member of Wing's household.

After Wing failed two polygraph tests, the State filed a motion to find Wing in violation of the agreement and to refile the abuse of trust and vulnerable victim aggravating factors. Wing agreed that he committed the aggravating factors.

---

[2] The information did not include sentencing enhancements, but did include aggravating factors.

The superior court sentenced Wing to an exceptional sentence of 416 months. Wing appeals his judgement and sentence.

## ANALYSIS

### I. AGGRAVATING FACTORS

Wing argues that the State breached the plea agreement by supplementing the amended information with additional aggravators on both counts after Wing failed his polygraph tests and was found in violation of the agreement. Specifically, he argues that the plea agreement only permitted the State to argue "sentencing enhancements," not aggravating factors. We disagree.

Whether a breach of a plea agreement has occurred is a question of law, which we review de novo. *State v. Neisler*, 191 Wn. App. 259, 265, 361 P.3d 278 (2015). A defendant may raise the issue of a prosecutor's breach of a plea agreement for the first time on appeal. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P .2d 1199 (1997). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, due process considerations come into play. *Sledge*, 133 Wn.2d at 839. "Due process requires a prosecutor to adhere to the terms of the agreement." *Sledge*, 133 Wn.2d at 839.

Plea agreements are contracts and issues concerning their interpretation are reviewed de novo. *State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006). Our primary objective in interpreting a plea agreement is to give effect to the intent of the parties. *State v. Lathrop*, 125 Wn. App. 353, 362, 104 P.3d 737 (2005). We review the plea agreement as a whole, considering the objective of the agreement, all the circumstances surrounding the agreement, and the

reasonableness of respective interpretations advocated by the parties. *Lathrop*, 125 Wn. App. at 362. Any ambiguities are resolved against the drafter. *Lathrop*, 125 Wn. App. at 362.

Wing contends that the State violated the terms of the plea agreement by adding aggravating factors because the Proffer Agreement only allowed "sentencing enhancements." Br. of Appellant 19. However, the evidence shows that the intent of the parties was to allow the State to refile the aggravating factors that it had filed in the original charging information.

The Proffer Agreement, in relevant parts, states:

1. . . . .
(d) If Danny A. Wing is not truthful during the interview(s) or trial(s), then the State shall offer Manslaughter 1st Degree Domestic Violence & Assault in the 3rd Degree Domestic Violence, both charges with enhancements. Each party would then be free to argue between the low end of the standard range and the maximum penalty (i.e. Life imprisonment).
. . . .

2. . . . . Should the State believe that Danny's statement(s) contain material misstatements or omissions of material fact, then the parties' shall proceed with the plea outlined in number 4, but the defendant is subject to the procedure outlined in number 7.
. . . .

7. [T]he State shall be entitled to re-file the Manslaughter in the 1st degree enhancements if the State can demonstrate [that Wing failed two polygraphs].

8. If 7[] occurs, then . . . the State may re-file, without objection, the enhancements as to the Manslaughter 1 - DV and the Assault [of a] Child 3 - DV . . . . Significantly, this being a Class A felony the State could seek any amount of confinement time up to Life in prison.

CP at 54-55.

As noted above, the Proffer Agreement repeatedly references the State's authority to "*re-file*" the "enhancements." This logically refers to the original charging information from which

the plea bargain was formed. The original charging information included both the abuse of trust

and vulnerable victim aggravators, but no sentencing enhancements. The language of the Proffer

Agreement, read in the context of the first information, the second amended information, and the

supplemental to amended information, clearly refers to the abuse of trust and vulnerable victim

aggravating factors, which were originally charged then dropped in concert with the plea

agreement, with the potential to be refiled should Wing fail two polygraph tests.

It is also worth noting that the Proffer Agreement expressly states that if Wing violated

the agreement and the State added the "enhancements," the State was free to pursue any amount

of confinement up to life in prison. CP at 55. Had the parties intended to strictly limit the State

to adding "sentencing enhancements" in the event that Wing failed to uphold his side of the plea

agreement, there would be no legally sound way for the State to seek a sentence of life in prison

because a true sentencing enhancement has a determinate additional amount of time for a

violation. RCW 9.94A.533. Rather, the only possible way for Wing to receive a sentence of life

in prison would be if aggravating factors were charged and pleaded. RCW 9.94A.535; RCW

9.94A.537.

This interpretation is further supported by Wing's comments during the plea colloquy

with superior court. There, Wing explained to the superior court:

> [W]e are prepared at this time to enter a plea of guilty to the new amended
> information through which the state will be dismissing the homicide by abuse.
> *They'll also be dismissing the enhancements, subject to refiling* on the
> enhancements only, related to a proffer agreement that was signed by both sides
> this day.

Verbatim Record of Proceedings (VRP) (March 19, 2015) at 3 (emphasis added). At the same

hearing, the State explained the essence of the plea agreement to the court:

> [O]bviously Mr. Wing is in a position where he's going to get some benefit to this plea, but by agreement if he does not hold up his end, what he is supposed to do, the state has the option under certain conditions to add the *enhancements or aggravators* back into this charge, which he will stipulate to with regard to facts, and then we will proceed to sentencing under those charges.

VRP (March 19, 2015) at 3-4. The superior court confirmed with Wing's counsel, "Is that

accurate, [Wing's counsel]?" To which Wing's counsel responded, "That is correct, Your

Honor, with the understanding that it's just enhancements related to Count I and II that are in the

amended information and not the original Count I, homicide by abuse, which is forever

dismissed by today's actions." VRP (March 19, 2015) at 4. Viewed in context, the word

"enhancements" as used in the Proffer Agreement was not intended to limit the State to

"sentencing enhancements" under RCW 9.94A.533, but rather referred to the aggravating factors

which were a critical part of the plea deal.

Wing's comments to the superior court when the State moved to add the aggravating

factors to the amended information further evidences his understanding that the terms of the plea

agreement permitted such action. Initially, Wing's counsel opposed the addition of the

aggravators by arguing that Wing had not failed two licensed polygraph tests as required by the

plea agreement. However, Wing then asked his counsel to concede that dispute, and expressed

his desire to stipulate to the aggravating factors. Wing explained himself to the superior court,

saying, "[M]y point is all these polygraphs and everything were the intent to try and get an

aggravator." VRP (Sept. 25, 2015) at 19. Wing then proceeded to stipulate to both aggravating

6

factors. At no point in the colloquy did Wing or his counsel express any surprise or confusion as to why or how the aggravators were being added, suggesting that Wing understood the State's actions to be consistent with their previously negotiated plea agreement.

For these reasons we hold that the State did not breach the terms of the plea agreement.

## II. WING'S OFFENDER SCORE & GUILTY PLEA

Wing also argues that because his guilty plea was premised on an incorrect offender score and incorrect standard range sentence his guilty plea was involuntary, and thus he should be permitted to withdraw it. Specifically, Wing argues, and the State concedes, that Wing's offender score for the third degree assault charge was incorrectly calculated at 6, rather than 5. We accept the State's concession.

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). CrR 4.2(d) requires a plea be "made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." Prior to acceptance of a guilty plea, "[a] defendant 'must be informed of all the direct consequences of his plea.'" *State v. A.N.J.*, 168 Wn.2d 91, 113-14, 225 P.3d 956 (2010) (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). The length of a sentence is a direct consequence of a guilty plea. *State v. Mendoza*, 157 Wn.2d 582, 590, 141 P.3d 49 (2006).

A defendant may be allowed to withdraw his guilty plea "'whenever it appears that withdrawal is necessary to correct a manifest injustice.'" *State v. Codiga*, 162 Wn.2d 912, 922-23, 175 P.3d 1082 (2008) (citing CrR 4.2(f)). "An involuntary plea can amount to manifest

injustice." *Codiga*, 162 Wn.2d at 923. A miscalculation of an offender score renders the defendant's plea involuntary and the plea may be withdrawn. *Codiga*, 162 Wn.2d at 925.

The standard sentencing range under Washington's Sentencing Reform Act of 1981 (SRA) for any given offense is a function of the offense's seriousness level and the defendant's offender score. RCW 9.94A.525. The legislature assigns the seriousness level. Third degree assault of a child is a level III offense. RCW 9.94A.515.

The offender score is calculated by counting the prior and current felony convictions in accordance with RCW 9.94A.525. Current felony offenses are treated as if they were prior offenses when scoring the other crimes being sentenced. RCW 9.94A.525(1); RCW 9.94A.589(1)(a). Wing does not dispute the scoring of his criminal history. With Wing's history of four prior felony convictions, plus one current felony conviction (first degree manslaughter), his offender score is 5. RCW 9.94A.525(7). Because third degree assault of a child is a level III offense, Wing's standard range sentence is 17-22 months. RCW 9.94A.515; RCW 9.94A.510. However, Wing's offender score was improperly calculated at a 6, and his corresponding standard sentence range was improperly calculated at 22-29 months.

Because Wing's guilty plea was premised on an incorrect offender score and standard sentence range, his plea was involuntary. When a guilty plea is based on misinformation, including a miscalculated offender score that resulted in an incorrect higher standard range, the

defendant may move to withdraw the plea based on involuntariness.[3] *Mendoza*, 157 Wn.2d at 591.

The State argues that because the miscalculated offender score on the third degree assault of a child conviction did not determine Wing's ultimate sentence, there is no manifest injustice to correct and we should affirm the guilty plea. We disagree with the State.

A plea agreement must be treated as indivisible "'when pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding.'" *Bisson*, 156 Wn.2d at 519 (emphasis omitted) (quoting *State v. Turley*, 149 Wn.2d 395, 400, 69 P.3d 338 (2003)). Thus, if there is error on one count of an indivisible multicount agreement, the entire plea agreement must be set aside upon request. *Turley*, 149 Wn.2d at 400-401. Here, Wing's pleas to both charges were made at the same time, in one document, and accepted in a single proceeding. Consequently, the plea agreement is indivisible.

Nonetheless, the State, while acknowledging that no legal authority supports its position, argues that Wing understood the sentence he was facing and that the incorrect offender score on the third degree assault of a child conviction had no impact. The State emphasizes that the two convictions were to run concurrently, and the standard range for the third degree assault charge, as the lesser count, had no bearing on Wing's decision to plead guilty. However, Washington courts have explicitly "decline[d] to adopt an analysis" that would make the determination of the

---

[3] Wing contends that he may alternatively elect to specifically enforce the agreement. However, because we hold that the State did not breach the plea agreement, specific performance is unavailable to Wing. *State v. Barber*, 170 Wn.2d 854, 874, 248 P.3d 494 (2011) ("We limit the remedy of specific performance to the situation in which the State breaches its promise to make a specific charging decision or recommendation to the sentencing court.").

voluntariness of a defendant's plea dependent upon "the defendant's subjective decision to plead guilty." *Isadore*, 151 Wn.2d at 302. "A reviewing court cannot determine with certainty how a defendant arrived at his personal decision to plead guilty, nor discern what weight a defendant gave to each factor relating to the decision." *In re Bradley*, 165 Wn.2d 934, 940-41, 205 P.3d 123 (2009).

Consequently, because the improperly calculated offender score for Wing's third degree assault of a child conviction rendered his indivisible plea involuntary, we reverse and remand to allow Wing to withdraw his guilty plea.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J

We concur:

Johanson, J.

Sutton, J.

10